E. R. SINKLER, Respondent, v. GURLY SINKLER, Appellant.

(194 N. W. 817.)

**Divorce — judgment distributing estate cannot be modified except upon grounds on which ordinary judgments may be modified.**

1. Where, in a divorce action, the court decrees a final distribution of the estate of the parties, it is *held*, for reasons stated in the opinion, that the court cannot, several years later, modify such final judgment upon the applica·tion of the husband,· except upon some one or more of the grounds on which ordinary judgments may be modified, vacated or set aside.

**Divorce — failure to make payments under decree finally distributing property held not contempt.**

2. For reasons stated in the opinion, it is *held* that the trial court did not err in refusing to adjudge the plaintiff guilty of contempt for failure to make periodical payments to his divorced wife in conformity with the terms of the original decree of divorce.

Opinion filed July 26, 1923.

Divorce, 19 C. J. § 617 p. 272 n. 32; § 699 p. 304 n. 47.

Note.—On validity of agreement made after divorce as a substitute for an award of alimony, see note in 35 L.R.A.(N.S.) 1167.

Appeal from the District Court of Ward County, *Lowe,* J.

Defendant appeals from a judgment and order dismissing contempt proceeding and modifying an original decree of divorce.

Reversed in part; affirmed in part.

*Bosard & Twiford* and *Murphy & Toner,* for appellant.

*Greenleaf & Wooledge* and *Palda & Aaker,* for respondent.

JOHNSON, J. This is an appeal from a judgment and an order of the district court of Ward county, dismissing contempt proceedings against the plaintiff and respondent and modifying an original order and decree of divorce.

On May 19, 1916, E. R. Sinkler commenced a divorce action against Gurly Sinkler, his wife. Answer was in due time interposed, denying the charge and asking for temporary alimony and counsel fees. On the 23rd of March, 1917, the defendant in the divorce action served an amended answer on the plaintiff therein and a cross-complaint alleging desertion, praying for absolute divorce, the custody of the children and for other relief. On the same day, plaintiff answered the cross-complaint, denying the allegations thereof generally. On the 23d day of March, 1917, the action was heard in Ward county. On that date the plaintiff and defendant entered into a contract effecting a settlement of their property rights in view of the pending divorce action and the possibility of a decree. By the terms of this agreement, the defendant in that action released all her interests in the real property of the plaintiff; the plaintiff agreed to pay to the defendant, in the event of a divorce, the sum of $300 when the decree was signed and the further sum of $250 to the counsel for the defendant; plaintiff agreed that his wife should have as her absolute property certain specific personal property; and he would pay her $225 monthly during the term of her natural life "as and for permanent alimony." The defendant, in consideration thereof, agreed to support the children and keep a home for them without charge to them until they should be twenty-five years of age. It was further, in effect, stipulated that the agreement should be construed as a confession of judgment if the husband defaulted in any payments and that judgment might be entered in the district court of Ward county for each and every instalment in default upon the affidavit of Mrs. Sinkler stating the amount due and unpaid, which affidavit

was to be submitted ex parte to the district judge and an appropriate order for judgment made thereon and a judgment entered by the clerk of the district court accordingly. Judgments so entered were to become liens upon the real property of the plaintiff and ordinary execution had thereon. It was further stipulated, in case a decree of divorce were made, that the court should decree in full payment of all claims by defendant against plaintiff's property as permanent alimony to the defendant the sum of $225 monthly, payable as stipulated. The agreement contained the following stipulation: "Neither party shall at any time apply to any court to either decrease or increase said alimony (hereby fixed at the sum of $225 per month)." The contract provided that the stipulation just quoted should be and it was in fact incorporated in the decree.

On the 23d of March, 1917, the court made findings of facts and conclusions of law generally in favor of Mrs. Sinkler for a divorce on the ground of desertion. The sixth finding is hereinafter set forth. The fifth conclusion of law is as follows:

5. "That as permanent alimony the defendant should be awarded the sum of $300 payable upon the entry of this decree (and the further sum of $250 as and for counsel fees) and the further sum of $225 for each and every month during the life of the defendant, payable on the first day of each month, commencing with the first day of April, 1917, said monthly payments should not be increased or diminished at any time or by any court upon the application of either party pursuant to the written agreement of the parties of said action, fixing said alimony."

On the 23d of March judgment was entered in conformity with the finding and the order of the court.

The plaintiff paid the defendant, according to the agreement and the decree, the sum of $300 and $250 to her counsel. Certain other payments were made, but plaintiff defaulted during the years 1921 and 1922, and, acting under the stipulations in the contract, judgments were entered against the husband in Ward county on July 12, 1921 for $525.25, and on December 27, 1921, for $934.82. Executions were issued thereon and levies made on real property of the plaintiff.

On the 17th of January, 1922, the plaintiff being still in arrears under the decree, Mrs. Sinkler applied to the district court for an order

requiring plaintiff to show cause why he should not be adjudged guilty of contempt for failure to pay according to the decree. This order was returnable on the 26th of January, 1922. On January 20, 1922, the plaintiff served notice on the defendant that on the return day for the order aforesaid in the contempt proceedings, he would apply to the court for an order modifying the judgment entered in the original divorce action, on the 23rd of March, 1917, and supported such application by his own affidavit and the files in the action. It is not necessary to set out in full the detailed statement of facts in the affidavit upon which the plaintiff asked the court to modify the original decree as to the payment of $225 monthly. In general, it is based upon the allegations that the plaintiff's earnings as a lawyer have decreased very materially; that his law business has not been lucrative and that he cannot earn an amount sufficient to pay according to the decree and to support himself and his present wife at the same time.

On the 26th of January, on the return day, the defendant replied to the plaintiff's affidavit, denying generally the allegations of inability made by the plaintiff and asserting that the original decree was based upon a contract fairly entered into and setting up other facts not necessary to detail here.

Upon the affidavit and moving papers aforesaid, the matter was heard on April 28, 1922, and the court made its order dismissing the contempt proceedings and modifying the original decree so as to release the plaintiff from the obligation to pay defendant $225 per month during her natural life and permitting and directing plaintiff to pay instead the gross sum of $6,000, in full as settlement of property rights between the parties. The court found that, because of adverse financial conditions, the plaintiff was unable to earn enough to make payments in accordance with the original decree. The gross sum of $6,000 ordered to be paid included the amount of the two judgments heretofore referred to.

On this order of the court judgment was duly entered on the 21st of June, 1922 and Mrs. Sinkler, in this appeal, challenges the correctness of the order and of the judgment.

Our statute, § 4405, Comp. Laws 1913, gives the court control over divorce decrees, and the authority to modify judgments in divorce actions. The statute reads as follows:

Sec. 4405. Support. "When divorce is granted, the court shall make such equitable distribution of the property of the parties thereto as may seem just and proper and may compel either of such parties to provide for the maintenance of the children of the marriage, and make such suitable allowances to the other party for support during life or for a shorter period as to the court may seem just, having regard to the circumstances of the parties respectively; and the court may from time to time modify its orders in these respects." See Rindlaub v. Rindlaub, 28 N. D. 168, 147 N. W. 725.

Section 4411, Comp. Laws 1913, provides that either husband or wife may enter into contracts with the other and with other persons respecting property to the same extent as if unmarried. After marriage, the wife has the same rights with respect to property, contracts and torts as before marriage. Section 4412, Comp. Laws 1913, gives husband and wife the power to contract with reference to maintenance during separation.

The right of husband and wife to contract with respect to the division of property in the event of a divorce has also been recognized by the courts. The contract entered into in this case would be enforceable in equity between the parties if not incorporated in the decree. Nelson v. Vassenden, 115 Minn. 1, 35 L.R.A.(N.S.) 1167, 131 N. W. 794. The rule is that agreements respecting property rights, the divorce proceedings be pending, are not void as in contravention of good morals or public policy unless their purpose or effect be in some way to facilitate divorce proceedings. Burgess v. Burgess, 17 S. D. 44, 95 N. W. 279; Ward v. Goodrich, 34 Colo. 369, 2 L.R.A.(N.S.) 201, 114 Am. St. Rep. 167, 82 Pac. 701. Such agreements, when reasonable, when fairly entered into, without fraud or misrepresentation, while they are carefully scrutinized by the courts, are, when confined to the adjustment of property rights, binding and will be enforced. Amspoker v. Amspoker, 99 Neb. 122, 155 N. W. 602; Phillips v. Phillips, 39 R. I. 92, 97 Atl. 593, 12 L.R.A.(N.S.) 848, note; Nelson v. Vassenden, supra.

In the Vassenden Case, Judge Simpson, speaking for the supreme court of Minnesota, says that it is desirable that the parties submit the contract to the court for approval because they are thereby relieved later from the necessity of proving that the contract was fairly entered into

and was not fraudulent or collusive. That is what the parties did in the case at bar. They submitted the contract to the court, obtained the approval of the court thereon and the incorporation of the material portions of the agreement with reference to the division of property in the decree. The defendant and appellant in this action released her claim to any interest in the real property of her husband in consideration of a cash payment, some furniture transferred to her, and certain monthly payments to her during her natural life. She did not ask the court to award her the homestead or any portion of the property at that time owned by her husband who was and is a practising lawyer at Minot. It appears that at that time his practice was lucrative and that his income then was such that to pay her $225 a month did not seem a serious burden to him. It now appears that it has become a burden, because of financial stringencies which may or may not be permanent, for the plaintiff to make such payments. It further appears in the evidence that the property owned by the plaintiff and respondent in Ward County and elsewhere has deteriorated in value and perhaps has ceased to be of substantial value because of circumstances not material to inquire into at this time. Lands have been sold for taxes, tax liens have been permitted to attach, and the like.

The primary question in this case is whether the district court had power to modify the decree of divorce entered in 1917, under all the facts and circumstances of the case; the correctness of the order vacating the contempt order is also challenged.

It is not to be doubted that the court, under the statute and regardless of any contract of the parties to the contrary, at all times retains control of the decree of divorce insofar as the rights of children are concerned. The court likewise may relieve the parties from contempt, if the circumstances require. The trial court, in the exercise of a sound discretion, had the right to relieve Mr. Sinkler from contempt in this case. In this respect no error was committed.

Whether contempt proceedings may, under any circumstances, be maintained against Mr. Sinkler, in view of the stipulation of the parties, on which the decree is founded, and the availability thereunder of the remedy of execution, we do not now decide. That question is not necessarily involved. That question must be answered in the light of the facts and circumstances when it is properly raised.

Is the decree made by the district court in 1917, one that may be modified fundamentally by the court after five years, under § 4405? In so far as it relates to the support of the children or their custody, or to alimony, that is, support for the wife, it can. Is not the decree, however, in reality, a judgment distributing the property, real and personal, of the parties? If it is, on principle and authority, the court erred in modifying it, as it did, in 1922.

In construing a judgment, effect should be given to every word and part of it; of two possible interpretations, that will be adopted which will harmonize with the facts and the law of the case, and which renders it more reasonable, effective and conclusive. A construction acquiesced in by the parties will not be changed without good reason. A judgment should be interpreted with reference to the findings of the court; and if the judgment be ambiguous, recourse may be had to a duly executed stipulation of the parties. 23 Cyc. 1102, 1103; Thayer v. McGee, 20 Mich. 195. With these principles in mind, it becomes necessary to refer to some of the facts bearing upon the intentions of the parties and the real purpose the court intended to accomplish by the decree.

The contract between the parties upon which the award of permanent alimony, so-called, is based, clearly indicates an intention to adjust finally all the property rights of the parties to the marriage. The contract, in the preamble thereof, recites that the parties have made and intend thereby to make a "full and complete settlement of the property rights between the plaintiff and defendant." It is further agreed in the contract that the wife shall convey to the husband her interest in specified real property in Minot and also some farm land. The contract further provided that the wife should receive certain specified personal property, namely, all of the furniture in the so-called "Sinkler Flat" in Chicago; the husband also agreed to pay in cash the sum of $550 and in addition $225 per month during the life of the wife. The wife, in turn, agreed to maintain a home for the children where they might live without expense to them until they arrived at the age of twenty-five years. Simultaneously with the making of the contract and the decree of the court, the wife conveyed all her interest in the real property described in the contract and she has at all times since maintained a home for the children of the marriage without expense

to them. She released her right under § 4406, Comp. Laws 1913, as the innocent party, to have the homestead assigned to her, either absolutely or for a limited period.

The court in the findings of fact found as follows:

6. "The court further finds that the *property rights* of plaintiff and defendant have been adjusted between them by a written instrument duly executed by both plaintiff and defendant and that *such adjustment of property rights* between said parties is hereby ratified and confirmed by the court and that the provisions hereinafter set forth as to permanent alimony, counsel fees and suit money is based thereon."

In the order for judgment the court, further following the contract, says: "Said monthly payments should not be increased or diminished at any time or by any court upon the application of either party, pursuant to the written agreement of the parties to said action, fixing said alimony." The parties to the contract attempted to waive the right, if any, to apply to the court for a modification of the decree, insofar as the adjustment of property rights was concerned. If the stipulation be construed as a waiver by each party of the right to ask to have the decree modified in this respect, would it be competent for them to do so? See Compton v. Compton, 111 App. Div. 923, 97 N. Y. Supp. 618; would it be in any manner an attempt to oust the courts of jurisdiction? See Palmer v. Lavers, 218 Mass. 286, 105 N. E. 1000. The parties had submitted the contract to a court of competent jurisdiction and obtained an approval of the same. · They had had their day in court and it may be doubted if this stipulation is not binding as a waiver by both parties of asserting the right of review as far as the property settlement is concerned. Children, of course, could not be affected. We do not decide what the effect of this stipulation is, however, as it is not necessary in the view we take of the case. In any event, this stipulation, in the interest of repose, is some evidence that the parties themselves intended to effect a complete property adjustment and distribution. See 3 C. J. 661, 662, and note.

The decree followed the findings and the conclusions in all material and substantial particulars.

It seems clear from the foregoing statement of facts that the parties intended to adjust finally and fully all property rights and settle all claims arising out of the marriage relation. It is clear, also, that

the court, in making the decree, intended to and did make a final adjustment and settlement of property rights and claims between the parties. It is in other words, evident that on principle, insofar as the property rights of the parties were adjusted in the decree, the decree rests on the same basis as if the court had awarded a gross or lump sum to the wife in lieu of her interest in the property of her husband, of which the court, in a divorce action, could properly take cognizance. The award to the wife, in view of the findings and of the circumstances, cannot properly be construed as alimony in the true technical sense of the word, namely, an allowance for the support and maintenance of the wife alone. We are clear that the court intended, and that such is the effect of the decree, to settle finally, upon the basis of the agreement submitted to it, all the property rights of the parties. Under such circumstances, justice and a regard for the intent of the parties and the purpose of the court requires that the same effect be given to the decree as if a gross sum had been awarded to the wife, or real and personal property divided or apportioned between them.

Under § 4405, the court may, when divorce is granted, (1) equitably distribute the property of the parties, no distinction being made between real and personal property; (2) compel either party to provide support for the children of the marriage; and (3) make a just allowance to the other party for support, during life or for a shorter period. It is, therefore, clearly the duty of the court, when proper foundation is laid in the pleadings, supported by legally sufficient proof, to distribute equitably the real and personal property of the parties to the marriage. Such portion of the decree, however, is not, in any proper sense, alimony. Our code does not use this well understood "term of art" (Calame v. Calame, 25 N. J. Eq. 549) except in §§ 4402 and 4403, in dealing with support, maintenance or suit money, *during the pendency* of the divorce proceeding. Alimony is the allowance made to a woman for her support "out of the husband's estate." Bl. Com. 441. It is not to be understood as involving a distribution of the estate by force of law. Bouvier's Dist. title "Alimony." "A decree for alimony must secure to the wife an annuity or other personal right to maintenance. An absolute right to property cannot be decreed in a case for alimony." Maguire v. Maguire, 7 Dana, 181.

It seems clear, therefore, that a decree under § 4405, distributing

property, awarding support and providing for the children of the marriage, is something more than a decree for alimony, in its proper legal signification. In so far as the court awards money in the decree, whether payable monthly, annually, or at other stated periods, for the support of the wife, such award is in the nature of alimony and, it may be conceded, generally, may be modified as changed circumstances require, under the concluding clause of this section. The same is true with respect to the provisions of the decree for the support or custody of the children of the marriage.

When a court decrees a distribution of the real or personal property—other than money—of the parties, a different situation is presented. It may, and usually will after the lapse of time, become impracticable and often utterly impossible for the court to modify the decree in this respect. Real property is conveyed or encumbered; personal property is wasted, transferred or completely dissipated. A redistribution of property, under such circumstances, becomes not only theoretically difficult, but practically impossible. The courts have, therefore, held, notwithstanding statutes giving control over the decree with right to modify the same, that a judgment decreeing specific real property or finally distributing the estate, is a final judgment and cannot be modified, except, of course, in the same manner and on the same grounds as other judgments. 19 C. J. 272, and cases cited.

The supreme court of Nebraska in the case of Beard v. Beard, 57 Neb. 754, 78 N. W. 255, says:

"The alimony awarded the wife in this divorce suit was a sum in gross meant, and intended by the court, to be in lieu of her dower, homestead, and all her other rights and claims against the property of the husband. It was, in effect, a decree awarding the wife a money judgment for her share of the common property of the husband and wife upon the dissolution of the marriage; and where the court granting the divorce awards the wife a homestead, or other rights in the husband's property, and adjourns sine die, such judgment becomes a positive, final, and conclusive one, and cannot be changed or modified after the term at which it was rendered, except for the causes and in the same manner that other judgments may be modified."

The statutes of Nebraska at the time gave the court the power to modify the divorce decree as to alimony or other allowance for the

49 N. D.—73.

wife and children, or either of them, substantially to the same effect as § 4405, Comp. Laws 1913. See also 19 C. J. 272; Kraft v. Kraft, 193 Iowa, 602, 187 N. W. 449. The court in the order for judgment and in the decree uses the expression "permanent alimony." We do not think that the term "alimony" was there used in the technical sense. That would be too narrow a construction to give the decree in view of the findings of the court and the stipulation of the parties. As heretofore pointed out, § 4405 does not use the term. We think that the court, having in mind and before it the contract of the parties according to the terms of which the wife transferred all her interest in the husband's property and assumed definite obligations to support the children, had in mind that a decree for the sum of $225, per month, together with the cash payment and the award of specific personal property, with a provision in the contract for the confession of judgment and enforcement thereof by execution as in cases of ordinary judgment, should be considered in legal effect the same as if an allowance of a gross sum had been made, or a judgment entered, making a final distribution of the estate of the parties.

Both sides presented elaborate and able arguments upon the right of the court, under § 4405, to modify the decree when originally based, as far as the provisions therein for the support of the wife are concerned, upon the agreement of the parties entered into without fraud, collusion or undue influence. This interesting question we find it unnecessary to decide. In some, at least, of those jurisdictions where the right to modify the decree entered upon agreement of the parties as to support of the wife, is held to exist, such power of subsequent modification is denied when the judgment decrees real property or is a final adjudication of property rights. This appears in the citations of authorities heretofore made. Some of the authorities cited as tending to support the view that such power of modification does not exist when the decree, with respect to the provisions thereof for the support of the wife, is founded on a valid contract, are as follows: Henderson v. Henderson, 37 Or. 141, 48 L.R.A. 766, 82 Am. St. Rep. 741, 60 Pac. 597, 61 Pac. 136; Pryor v. Pryor, 88 Ark. 302, 129 Am. St. Rep. 102, 114 S. W. 700; Storey v. Storey, 125 Ill. 608, 1 L.R.A. 320, 8 Am. St. Rep. 417, 18 N. E. 329; Julier v. Julier, 62 Ohio St. 90, 78 Am. St. Rep. 697, 56 N. E. 661; Stanfield v.

Stanfield, 22 Okla. 574, 98 Pac. 334. See also 13 C. J. 464; 1 R. C. L. 947. The following authorities are frequently cited in support of the contrary view: Wallace v. Wallace, 74 N. H. 256, 67 Atl. 580, 13 Ann. Cas. 293; Blake v. Blake, 68 Wis. 303, 32 N. W. 48; Id. 75 Wis. 339, 43 N. W. 144; Camp v. Camp, 158 Mich. 221, 122 N. W. 521; Warren v. Warren, 114 Minn. 389, 131 N. W. 379, 116 Minn. 458, 133 N. W. 1009.

We are, therefore, of the opinion that the decree of the court entered in 1917 was in fact, and was intended by the court and understood by the parties to be, a final adjustment of their property rights to the same extent as if a gross sum or money judgment had been awarded, or a general distribution of the estate had been made, and that the court is now without power to amend the decree and to wipe out the monthly payment stipulated to the wife and substitute a gross sum therefor.

The judgment of the trial court is reversed and the case is remanded with direction to proceed in conformity with this opinion.

CHRISTIANSON and NUESSLE, JJ., concur.

BIRDZELL, J., concurs.

BRONSON, Ch. J. (partly concurring; partly dissenting). This cause was argued and submitted before this court on October 4th, 1922. This court, as then constituted, in December 30th, 1923, through an opinion of the Honorable George M. McKenna, district judge, sitting in place of Mr. Justice Grace, disqualified, rendered its decision. It ordered that the order and judgment of the lower court so far as it related to a modification of the original decree of divorce entered on the 23d day of March, 1917 be reversed; that the appellant recover costs on this appeal and such additional sum as suit money and attorneys' fees as the trial court in its discretion may award. The writer, together with another associate justice, then specially concurred in the decision then rendered. This special concurrence was as follows: "I am of the opinion that the contempt proceedings upon the record were within the sound discretion of the trial court and should not be disturbed. I am further of the opinion that upon the record the judg-

ment for alimony should not be disturbed. Without deciding whether, upon the contract made, the judgment for alimony entered pursuant thereto may be modified under the equity powers of the court. I am of the opinion that the evidence is insufficient to warrant interposition of equitable powers to modify the terms of alimony contained in the decree of divorce. The question of the amount of attorneys' fees and suit money to be allowed the defendant on account of these proceedings should be referred to the trial court for the exercise of its discretion concerning the amount and the time of payment."

Pursuant to a petition, this court, as now constituted, on Jan. 30th, 1923, ordered a rehearing which was had on Feb. 10th, 1923.

I adhere to my conclusions, heretofore presented. I desire to supplement the same as follows;

In May, 1916, plaintiff instituted an action for divorce. In July, 1916, defendant answered asking for dismissal. On March 23d, 1917, defendant, in an amended answer, set up a cross-complaint. Then, the parties made a written agreement concerning settlement of their respective property rights. Therein, the defendant wife agreed to convey to the plaintiff husband certain real property in Minot. It was agreed that the wife should retain the household furniture in a flat in Chicago. Plaintiff agreed, upon the signing of a decree of divorce, to pay defendant $300 and $250 attorneys' fees and thereafter $225 monthly during the life of defendant as permanent alimony. Defendant agreed to maintain a home for three children, the issue of the marriage. It was further stipulated and agreed that neither party shall at any time apply to any court to either decrease or increase such alimony. That, in the event of default, the agreement should stand and be construed by the court as a confession of judgment on plaintiff's part and that judgment might be rendered for each and every installment of alimony due and unpaid upon the affidavit of defendant stating the amount so due and unpaid, and thereupon such amount should become a lien upon all property of plaintiff. It was further agreed that, in the event that judgment should be entered in defendant's favor, the court should decree, in full of all claims against plaintiff's property, permanent alimony to defendant in the sum of $225 payable monthly, and such decree should continue the provision that the parties to the action had agreed upon the amount of such alimony and that they further had

agreed that neither party shall have the right to apply to any court to either increase or diminish such alimony. On the same day, the divorce proceedings came up for hearing in the district court. Findings were made in favor of the defendant. These findings ratified and confirmed the agreement between the parties heretofore stated. They awarded to defendant custody of the minor children, $250 attorneys' fees, $300 in cash, $225 payable monthly during the life of the defendant commencing April 1st, 1917. They provided that such monthly payments shall not be increased or diminished at any time by any court upon the application of either party pursuant to the written agreement of the parties to the action, fixing such alimony. Thus, on the same day, pursuant to these findings a decree of divorce was entered. Plaintiff, after the expiration of ninety days fixed by the decree, re-married and has since resided in Minot following his profession as an attorney. Defendant and the children have resided in Chicago. She has complied with the terms of the decree by providing them with a home and superintending their education. Plaintiff paid to defendant $300 upon entry of the decree, and $250 counsel fees and continued to pay the further sum of $225 per month until the year 1921. He has paid a total of $11,250 including $525 paid in 1921. In addition plaintiff has paid to the children small sums from time to time aggregating $494.50. Plaintiff has paid no amount during the year 1922.

In 1921 defendant instituted proceedings to recover judgments for the alimony then due. Judgments were entered, in June 12th, 1921, for $525.25 and, on December 27th, 1921, for $934.82. An execution was issued upon the first judgment and levy·made upon some 200 acres of plaintiff's land. The same was sold and sheriff's certificate issued to defendant. On Jan. 17th, 1922, defendant made application for an order. to show cause why plaintiff should not be adjudged to be in contempt. In response thereto plaintiff moved the court for an order modifying the original decree. As grounds therefor, he alleged that he was practically insolvent and unable to pay his debts; that by reason of the financial stringency he had been unable to earn as much money as formerly. He submitted a property statement showing that he owned some 520 acres of farm lands, mortgaged for $6,800 wherein his equity was about $2,500; also that he owned three dwelling houses in Minot in which he had now an equity of about $2,500. He further

stated that the taxes were delinquent for the past three or four years and that he cannot pay the taxes; that he has an equity in some other real estate that does not exceed $2,000; that he is indebted to various persons in the sum of about $5,000; that he is only able, in his law business, to keep his business and household going; that he is able to borrow no more than $5,000 with which to make settlement of all alimony. Defendant resists such application upon the ground that plaintiff was bound by the former contract and decree entered. She controverted the statements that plaintiff was insolvent or unable to pay his debts. She asserted that she was fifty-one years old and under ordinary expectancy would be entitled to receive $30,000 or $40,000 as a lump settlement or payment under the original decree; that she is not able-bodied or able to work and is in poor health through her years of labor as plaintiff's wife in assisting him to accumulate his property. After a hearing, the trial court, in June 21, 1922, made its findings and order to the following effect: That plaintiff had not wilfully or intentionally failed to meet the payments in the original decree; that his failure is due to possession of insufficient cash; that this has been brought about by six successive crop failures in this country and the fact that there is very little money in circulation so that the proceeds of plaintiff's business has shrunk and is now barely sufficient to provide him with the necessaries of life and to meet current expenses; that by reason of the present financial condition of the country and of the conditions existing in this country during the past six years it is impossible for the plaintiff to meet the payments required in the original decree and he is entitled to have the judgment modified concerning payment of alimony so as to direct plaintiff to pay defendant the full sum of $6,000 as permanent alimony in lieu of the monthly payments originally ordered, to be paid as follows: Plaintiff shall pay the judgments of July 12th, 1921, $525.25, and the judgments of December 27th, 1921, $934.82, and the balance, $1,000 on January 1st, 1923, $1,000 on July 1st, 1923, $1,000 on January 1st, 1924, $1,000 on July 1st, 1924, and $539.93 on January 1st, 1925. It was further found that plaintiff was not in contempt. Accordingly, the original decree was modified.

Defendant, before this court, challenges the order and judgment of the trial court upon three principal grounds:

(1) That the trial court was without jurisdiction to modify the original decree.

(2) That, in any event, it had no authority to modify such decree, not attacked upon grounds of fraud or other equitable grounds.

(3) That, in any event, the trial court erred, upon the record, in awarding a lump sum of $6,000 instead of the monthly alimony fixed in the original decree.

In my opinion it is unnecessary to consider or determine the question, concerning which there is a divergence and variety of authority, namely, whether the court, in any event, has the power to either increase or decrease the permanent alimony awarded in the decree. Plaintiff is an able lawyer who has been successful financially at the Bar. At the time when the decree was rendered he was enjoying, comparatively considered, a large and lucrative practice. This continued, in varying degrees, until about the years of 1921 and 1922 when payments to his wife practically ceased. Until that time the financial ability of the plaintiff to pay the award was not questioned. It may be noted that the reason for modification of the original decree, pursuant to the order of the trial court, is based upon the fact that the plaintiff has insufficient cash through crop failures and economic conditions existing in the state and country. There is no showing that plaintiff's earning ability has decreased or that his health has suffered any impairment. Upon the record his earning ability, his legal learning, ripened by years of experience, remains the same. His financial status is impaired at present by reason of surrounding economic conditions. In this regard it may not be overlooked that these press not alone upon the plaintiff. Nevertheless, the trial court, through the modification made, requires plaintiff to pay to defendant the sum of $6,000 in certain payments up to January 1st, 1925, which average, in amount, about $200 monthly, whereas, the original decree provides for the payment of only $225. In other words, although the economic conditions and the present financial status of plaintiff have placed him in a position where he has insufficient cash to meet current monthly payments, yet the court modifies the original decree in such a manner as practically to provide that plaintiff shall, nevertheless, in his present condition, make approximately the same payments, with the further condition that thereafter he shall be relieved from all further liability.

In my opinion, where a fair and equitable agreement has been made between the parties without fraud or imposition, which served to act as a basis for the distribution of the accumulations of a family during the major portion of an ordinary lifetime, it would be inequitable indeed to set aside an award so based because now plaintiff happens, temporarily, to be in a position of need, and not to recognize a corresponding reward that defendant should have had when plaintiff was in prosperity. Again, it would be inequitable to presume that plaintiff, with his present standing as a lawyer and innate earning ability, would not be able again, under normal conditions, to be as successful and prosperous as he was in the days when the decree was rendered.