Shirley A. DVORAK, Plaintiff
and Appellant,

v.

C. Charles DVORAK, Defendant
and Appellee.

Civ. No. 10209.

Supreme Court of North Dakota.

Jan. 27, 1983.

R. Lee Hamilton, Grand Forks, for plaintiff and appellant.

Greenwood, Greenwood & Greenwood, Dickinson, for defendant and appellee; argued by Diane Melbye, Dickinson.

SAND, Justice.

This is a consolidated appeal by Shirley A. Dvorak (Shirley) from district court orders dated 23 March 1982 and 14 June 1982 denying her motion to modify or in the alternative reopen a default judgment of divorce and finding her in contempt of court for failure to pay money due under the judgment.

After fifteen years of marriage, Shirley and C. Charles Dvorak (Charles) encountered marital difficulties. Shirley, a licensed attorney, prepared and served Charles with a summons and complaint which sought a divorce. Thereafter Shirley drafted a "stipulation and agreement" for a divorce and property settlement. The agreement was signed by Shirley and Charles and, pursuant to the agreement, Shirley was to receive $13,500.00 representing one-half of their $27,000.00 Paine-Webber Fund;[1] Shirley was to pay Charles' summer tuition at a school in Colorado; and Shirley was to pay Charles $1,250.00 which was due and payable 31 October 1981. Additionally, Charles was to receive property in Weld County, Colorado, and Shirley was to retain ownership of property in Grand Forks. A default judgment was entered on 15 May 1981 which incorporated the terms of the "stipulation and agreement." Shirley subsequently did not make the payments as required by the judgment. An order to show cause hearing was held on 8 February 1982 to determine why Shirley should not be held in contempt for failure to comply with the default divorce decree and judgment. At the same time the court heard a motion by Shirley to modify the stipulated default divorce decree or in the alternative to reopen the judgment pursuant to Rule 60(b)(i), (iii) and (vi), North Dakota Rules of Civil Procedure.

After this hearing the court entered an order, dated 23 March 1982, in which Shirley's motion to modify the decree or reopen the judgment was denied. The court further ordered Shirley to pay to the defendant $13,500.00, with interest at the rate of 6 percent from the date of entry of the judgment, and $1,250.00, with interest at 6 percent from 31 October 1981. The court also

1. The "stipulation and agreement" did not specifically provide for disposition of the remaining $13,500.00 of the Paine-Webber Fund.

ordered that Shirley was in contempt on the sum of $1,250.00, plus interest, subject to a hearing on the ability to pay.

A second hearing was held on 26 April 1982 and after the hearing the court entered an order dated 14 June 1982 in which the court ordered Shirley to pay Charles $1,090.00, with interest at the rate of six percent, for summer tuition at a school in Colorado; to purge herself of contempt and pay to Charles the sum of $13,500.00 plus interest at the rate of six percent; and to purge herself of contempt and pay to Charles the sum of $1,250.00 plus interest at six percent from 31 October 1981. Shirley appealed from the two orders.[2]

The first issue raised by Shirley which we will consider is whether or not the trial court erred in denying her motion to modify the divorce decree or to reopen the default judgment. In conjunction with this issue, Shirley asserted that the lower court made findings which were against the weight of the evidence. We will consider these assertions in our discussion of the trial court's denial of Shirley's motion.

Shirley's motion was, in part, based on her contention that, during the course of their marriage, Charles committed adultery and, at the time the stipulation and agreement was executed, concealed that fact from her. Shirley contended that she would not have executed the stipulation and agreement if she had known of the adultery. Shirley also pointed out that part of the Paine-Webber Fund was not disposed of in the stipulation and agreement (see footnote 1) and that $11,600 in debts were omitted from the stipulation and agreement and judgment.

■ Our standard of review in cases involving an attempt to set aside a regularly entered judgment of divorce is whether or not the lower court abused its discretion. *Bridgeford v. Bridgeford,* 281 N.W.2d 583 (N.D.1979).

■ An abuse of discretion by the trial court is never assumed and must be affirmatively established. *City of Grand Forks v. Grand Forks Herald, Inc.,* 307 N.W.2d 572 (N.D.1981). We have defined an abuse of discretion as an action by the lower court in an arbitrary, unreasonable, or unconscionable manner. *Coulter v. Coulter,* 328 N.W.2d 232 (N.D.1982).

The lower court interpreted the stipulation and agreement to require Charles to receive the half of the Paine-Webber Fund not specifically mentioned in the stipulation and agreement and judgment.

■ This Court has held that stipulations such as the one entered in this case are contractual in nature. *Galloway v. Galloway,* 281 N.W.2d 804 (N.D.1979); *Rummel v. Rummel,* 234 N.W.2d 848 (N.D.1975). The interpretation of a contract is a question of law for the court to decide. *Bridgeford v. Bridgeford, supra.* A contract should be construed most strongly against the preparing party, who presumably looked after his or her best interests in the process of preparation. *Farmers Elevator Co. v. David,* 234 N.W.2d 26 (N.D.1975); *Cargill, Inc. v. Kavanaugh,* 228 N.W.2d 133 (N.D.1975).

■ In this instance there were only two parties to the stipulation and agreement. The stipulation specifically provided for the distribution of half of the Paine-Webber Fund to Shirley and was silent as to the remaining half. We believe the parties intended Charles to receive the remaining half of the fund. These factors, coupled with the principles of law relating to construction of contracts set forth earlier, leads us to conclude that the trial court properly interpreted the provisions of the stipulation and agreement relating to the Paine-Webber Fund.

■ Furthermore, we do not believe the lower court abused its discretion in denying Shirley's motion to modify or reopen the judgment to dispose of the $11,600.00 in

2. Shirley entered separate notices of appeal from the 23 March 1982 order and the 14 June 1982 order, and this Court entered an order

dated 7 July 1982 consolidating the appeals for consideration by this Court.

debts which were omitted from the stipulation and agreement and judgment. We do not believe the record establishes the prerequisite of mistake or inadvertence in the omission of these debts from the stipulation and agreement to be entitled to relief. Particularly significant is that Shirley prepared the stipulation and agreement.

Shirley's affidavit in support of her motion stated that she and Charles purchased a home in 1973 with the help of a $10,000 loan from Shirley's parents. A promissory note payable to Shirley's parents on 23 November 1983 was executed by both Shirley and Charles. The record is not clear as to whether or not the promissory note was paid. At the 8 February 1982 hearing counsel for Charles asserted that the promissory note had been repaid with funds from the sale of the house. In any event, because Shirley and Charles both signed the promissory note, we do not believe the court abused its discretion in failing to modify or reopen the judgment.

The remaining $1,600.00 of the omitted debt was, according to counsel for Shirley, "paid by the plaintiff [Shirley] to a third party for carpeting that was installed in the defendant's [Charles'] home." The record reflects the following dialogue between counsel for Charles and the court:

"MS. MELBYE: The $1,600 bill, it's the Defendant's again position that that was never really a bill. I believe that he stated to me that he thought that it was sort of a trade-off type of thing between the Plaintiff for services rendered, that her husband would receive $1,600 worth of carpeting for the house, et cetera, sort of a barter technique.

"THE COURT: You lost me someplace in there. A trade-off to the Plaintiff for what?

"MS. MELBYE: No. The Plaintiff— okay. The Plaintiff traded services, legal services, for the carpeting, I believe, and it was used in the house which the Defendant now resides in. However, the Defendant would also like to state that with this residence in Colorado he sold a vehicle and also received a legal judgment that he used the money to turn around and purchase that home in Colorado. So it's an offset technique this particular Defendant believes."

Nothing in the record further clarifies the $1,600 debt. However, Shirley apparently paid the debt. Further, Shirley is claiming the debt was omitted by mistake or inadvertence from the stipulation and agreement which she prepared. Because Shirley prepared the stipulation and agreement and because the debt was already paid by Shirley, we do not believe the record establishes that this debt was omitted through mistake or inadvertence and we do not believe the lower court abused its discretion in denying Shirley's motion because of mistake or inadvertence.

Shirley also contended that the court erred in denying her motion to modify or reopen the default judgment because of Charles' conduct in concealing the fact that he committed adultery. Shirley's affidavit in support of her motion stated that "at the time the parties entered into the Stipulation and Agreement, upon which the property division within the judgment was based, defendant [Charles] previously denied involvement with any other woman and knew plaintiff [Shirley] was unaware of said affairs. Defendant [Charles] further knew that plaintiff [Shirley] would never have entered into said Stipulation and Agreement had she known of his repeated adulterous conduct since 1969. Defendant's concealment of his continued marital infidelity was a material misrepresentation and constituted a fraud upon this affiant and in the absence of which affiant would not have executed the Stipulation and Agreement upon which judgment was based." Shirley did not testify at the hearing on her motion.

The lower court found that the fraud asserted by Shirley was not a "sufficient ... fraudulent act" to convince it to exercise its discretion and reopen the judgment.

North Dakota Rule of Civil Procedure 60(b)(iii) was adopted from and is identical to Federal Rule of Civil Procedure 60(b)(3) and consequently the interpretations given

to the federal rule by federal courts will be given appreciable weight in interpreting and construing Rule 60(b)(iii), NDRCivP. *E.g., Marmon v. Hodny,* 287 N.W.2d 470 (N.D.1980).

The party moving for relief from a judgment because of fraud has the burden of proof and must establish fraud by clear and convincing evidence. *Wilson v. Thompson,* 638 F.2d 801 (5th Cir.1981); *Jennings v. Hicklin,* 587 F.2d 946 (8th Cir.1978), and cases cited therein; see, Vol. 7, Moore's Federal Practice, ¶ 60.24[5].

There can be fraud without the making of a positive false statement, *Diemert v. Johnson,* 299 N.W.2d 546 (N.D. 1980), and the suppression of the truth with intent to induce another to enter into a contract is fraud. *Verry v. Murphy,* 163 N.W.2d 721 (N.D.1968).

Although we recognize that fraud may be established without the making of a positive false statement, we do not believe a party to a divorce must, in the absence of specific questioning, confide infidelities to his or her spouse in order to absolve himself from any alleged fraudulent conduct. An additional factor to be weighed and considered in this case is that the party claiming the fraud, Shirley, was, and is, a licensed attorney. The record does not reflect that any discovery procedures were initiated by Shirley prior to the default divorce to ascertain Charles' conduct. Moreover, Shirley's affidavit contains only vague references to any conversations between herself and Charles at the time of the execution of the stipulation concerning adulterous conduct by Charles. We do not believe these references establish fraud by clear and convincing evidence. These factors all lead us to conclude that the lower court did not abuse its discretion in denying Shirley's motion to reopen the default divorce judgment.

We recognize that this court has consistently followed a policy of liberally construing Rule 60(b), NDRCivP, for purposes of vacating a default judgment to permit a case to be heard and decided on its merits.

*First Federal Savings and Loan Ass'n v. Hulm,* 328 N.W.2d 837 (N.D.1982) and cases cited therein. Those cases deal primarily with defendants moving to vacate a default judgment for various reasons to allow the case to be heard on the merits. However, the instant case is distinguishable because it involves a plaintiff who prepared a stipulation and agreement from which the judgment was patterned and who appeared at the default hearing. Moreover, the plaintiff was and is a licensed attorney. See *McCullough v. Swanson,* 245 N.W.2d 262 (N.D.1976).

The next issue raised by Shirley is that the lower court erred in utilizing its contempt powers to enforce payment of a property settlement.

Charles contended that this issue was raised by Shirley for the first time on appeal. Shirley responded that "plain error affecting fundamental rights of a party or the jurisdiction of the court over the subject matter may be first raised on appeal."

We believe the issue raised by Shirley is properly before this court because it necessarily goes to the authority of the lower court to enforce a judgment through contempt.

The underlying question presented by this issue is whether or not the trial court acted properly in using its contempt powers to enforce the payment of funds resulting from the distribution of property in a divorce judgment.

Contempt may be either criminal or civil. North Dakota Century Code Ch. 27–10. In this instance, the vindication of judicial authority was not involved. Therefore, the contempt, if any, would be civil. *State v. Stokes,* 243 N.W.2d 372 (N.D.1976). The grounds for imposing civil contempt are set out in NDCC § 27–10–03, of which subsection 3 may have application. It provides:

"Every court of record of this state may punish as for a civil contempt any person guilty of a neglect or violation of a duty or other misconduct by which a right or remedy of a party to a civil action or proceeding pending in such

court may be defeated, impaired, impeded, or prejudiced in the following cases:

.  .  .  .  .

3. A party to an action or proceeding, an attorney, or other person, for the nonpayment of a sum of money ordered by the court to be paid in a case *where by law execution cannot be awarded for the collection of such sum,* or for any other disobedience to any lawful order, judgment, or process of the court." [Emphasis added.]

The payments involved were not ordered by the court for temporary support pursuant to NDCC § 14–05–23. *Hodous v. Hodous,* 76 N.D. 392, 36 N.W.2d 554, 12 A.L. R.2d 1051 (1949); *Raszler v. Raszler,* 80 N.W.2d 535 (N.D.1956). Neither were they payments for alimony or support pursuant to NDCC § 14–05–24. See *Karteus v. Karteus,* 67 N.D. 297, 272 N.W. 185 (1937), as distinguished from *Glynn v. Glynn,* 8 N.D. 233, 77 N.W. 594 (1898).

Volume 24 Am.Jur.2d, *Divorce and Separation,* § 921, states:

"In determining the power of a divorce court to imprison a person for contempt it should be noted that a large proportion of the state constitutions prohibit imprisonment for debt. It has been held that the husband cannot be imprisoned for a failure to make periodic payments for a limited period of time, where the payments are made to satisfy a debt of the husband to the wife for money owed to her, or where the payments are in settlement of the wife's rights in property. And in one jurisdiction it is held that not even a provision for support may be enforced by contempt where based upon an integrated settlement. In such cases the payments constitute 'debts' within the meaning of the constitutional prohibition against the imprisonment for debt."

The Annotation in 154 A.L.R. 443 (1945) illustrates that alimony or support payment orders generally are enforceable by contempt proceedings or powers of the court. However, the same annotation discloses that mere property settlements or contractual agreements regarding property settlements are not enforceable by contempt proceedings. The North Dakota cases cited earlier herein are in accord with this general rule of law.

In *Galloway v. Galloway,* 281 N.W.2d 804 (N.D.1979), this court held that a divorce judgment entered pursuant to a stipulation is to be treated as a contract and the parties' capacity to contract may be examined. In *Kack v. Kack,* 169 N.W.2d 111 (N.D. 1969), we stated that a decree may be modified depending on whether the amount permanently fixed and determined by the agreement between the parties constituted alimony ordered paid by the court, or if it was an amount due under an agreement or contract between the parties. If it was an agreement between the parties, as distinguished from payment of alimony or support, then it cannot be modified. *Sinkler v. Sinkler,* 49 N.D. 1144, 194 N.W. 817 (1923). These cases have value only in determining if the amount to be paid constituted a payment of support or alimony regardless of the title or label placed upon the agreement. Significantly, the judgment and stipulation and agreement in this case specifically provides that neither party was to receive alimony from the other.

■ Based on the foregoing principles of law, we conclude that the order of the court holding Shirley in contempt pertained to the distribution of property resulting from the divorce judgment which did not involve alimony or support payments. Furthermore, the sums of money due can be collected through the process of execution (NDCC § 27–10–03) and, therefore, are not subject to the contempt powers of the court.

The contempt order is reversed. The divorce decree judgment is in all matters affirmed. Neither party is to be assessed costs.

ERICKSTAD, C.J., and VANDE WALLE, PEDERSON and PAULSON, JJ., concur.