John A. SEABLOM, Plaintiff and Appellee,

v.

Carole J. SEABLOM, Defendant and Appellant.

Civ. No. 10505.

Supreme Court of North Dakota.

April 24, 1984.

Bradley W. Berg, Hillsboro, for plaintiff and appellee.

Jesse C. Trentadue, Grand Forks, for defendant and appellant.

VANDE WALLE, Justice.

Carole Seablom appealed from an order issued by the district court of Traill County, which determined that her ex-husband, John Seablom, was not in civil contempt for failure to make payments pursuant to their divorce decree. We affirm.

In May 1982 the district court granted John a divorce from Carole on the ground of irreconcilable differences. John and Carole, who had been married for 22 years and had no children, had submitted to the district court a proposed settlement. The agreement provided that Carole was to receive as her exclusive property the family residence and a car, both free from encumbrances; household goods and furnishings; and personal effects. John was to receive as his exclusive property farm tools and equipment, land, crops, an IRA and a checking account, and personal effects. John was to be liable for the large loans obtained for farming expenses; and John and Carole were to be liable individually for other smaller debts.

The agreement further stated:

"9. The plaintiff shall pay to the defendant the sum of Twenty-five Thousand Dollars ($25,000.00) which is due within 60 days of the date of Judgment.

"10. That the plaintiff shall pay unto the defendant as and for alimony the further sum of $14,400.00 payable in 36 consecutive monthly installments at the rate of $400.00 per month commencing on the 15th day of May, 1982, and payable on the 15th day of the month thereafter until paid in full. These payments shall not be terminated due to the death or remarriage of either party. The plaintiff may prepay all or part of this amount at any time.

"11. Upon payment of the $25,000.00 amount referred to above, each party shall execute and deliver to the other such instruments of title or conveyance which may be necessary to effect the foregoing division of property."

The district court discussed each provision of the proposed agreement with both parties. After determining their comprehension of the oral stipulation and after finding that the stipulation was an equitable settlement of their interests, the court incorporated the proposed settlement in its judgment.

When John was unable to pay Carole $25,000, as required by provision 9, they entered into another agreement, which extended the period for payment and provided for interest on the amount due. Carole received some of the $400 monthly payments, as required by provision 10.

In March 1983 Carole sought to enforce the $25,000 debt by execution on John's property. John declared his property exempt under Chapter 28–22, N.D.C.C., and the writ of execution was returned unsatisfied. Carole also sought to enforce the $400 monthly debt through civil contempt proceedings under Section 27–10–03, N.D. C.C. The district court conducted a hearing to determine if John was in contempt for failure to pay the $400 monthly payments. The court determined that the $400 monthly payments constituted property, not spousal support; that civil contempt would not lie; and that execution was the only remedy available for enforcement of the $400 monthly debt.

After Carole filed her notice of appeal from the order denying contempt as a remedy, John and his new wife filed a joint, Chapter 7, petition in the United States Bankruptcy Court, Eastern District of North Dakota. Carole filed motions in the bankruptcy court seeking permission to file a proof of claim and requesting an extension of time for commencement of adversary proceedings. The bankruptcy court granted the motions and stated that adversary proceedings in the bankruptcy court would commence 30 days after this court renders its decision in this case.[1]

On appeal Carole argues that the district court erred in determining that the monthly payments constituted a distribution of property, not spousal support. In the alternative, Carole contends that even if the divorce decree is a final settlement of property rights, the district court should have enforced the decree by using its contempt powers or by declaring that the exemption statutes of Chapter 28–22 are not applicable to divorce judgments. Carole also raises other issues that relate to the standard of proof and burden of proof in contempt proceedings. Because we determine that civil contempt is not a proper remedy to enforce the divorce judgment, we do not address the issues relating to contempt proceedings.

Carole contends that civil contempt is a proper remedy for enforcement of the monthly payments required by provision 10 of the divorce decree. Section 27–10–03, N.D.C.C., provides, in part:

"27–10–03. *Acts punishable as civil contempts.*—Every court of record of this state may punish as for a civil contempt any person guilty of a neglect or violation of a duty or other misconduct by which a right or remedy of a party to a civil action or proceeding pending in such court may be defeated, impaired, impeded, or prejudiced in the following cases: ...

"3. A party to an action or proceeding, ... for the nonpayment of a sum of money ordered by the court to be paid in a case *where by law execution cannot be awarded for the collection of such sum,* or for any other disobedience to any lawful order, judgment, or process of the court; ..." [Emphasis supplied.]

In *Dvorak v. Dvorak,* 329 N.W.2d 868 (N.D.1983), we interpreted Section 27–10–03 and stated that a district court may not use its contempt powers to enforce the payment of money resulting from the division of property in a divorce judgment. We stated that such sums may be collected through the process of execution. To determine whether or not the district court properly denied invoking its contempt powers, this court must first ascertain the nature of the payments required by provision 10, i.e., whether they are a form of property division or spousal support.

■ Carole sought to enforce the divorce decree by using execution as a remedy for the payment of the $25,000 (provision 9) and by using civil contempt as a remedy for the monthly payment of $400 (provision 10). Her selection of enforcement procedures does not, however, determine the nature of the monetary awards. Carole and John agree that the $25,000 payment is a form of property division; with respect to the $400 monthly payments, Carole interprets the payments as spousal support, John as property division.

At both the divorce hearing and the contempt hearing, Carole's attorney, who did not represent her on appeal, stated that the monthly payments were in the nature of a property settlement. When Carole's attorney examined the proposed findings of fact in the divorce proceeding, which were prepared by John's attorney, she requested that the payments be described as "alimony payments." John's attorney agreed to characterize the payments as alimony, and

1. We interpret the order issued by the bankruptcy court as granting relief from the automatic stay of Section 362, 11 U.S.C. We therefore do not need to determine if this court has concurrent jurisdiction to consider the merits of the action. See *Stamper v. Stamper,* 17 B.R. 216 (Bkrtcy.S.D.Ohio 1982).

the district court adopted the language in its decree.

■ Courts encourage settlements in divorce actions. *Fleck v. Fleck*, 337 N.W.2d 786 (N.D.1983). Contractual stipulations in divorce proceedings are governed by the law of contracts. *Clement v. Clement*, 325 N.W.2d 262 (N.D.1982); *Galloway v. Galloway*, 281 N.W.2d 804 (N.D.1979); *Rummel v. Rummel*, 234 N.W.2d 848 (N.D.1975). The interpretation of a contract is a matter of law for a court to decide. *Dvorak v. Dvorak, supra; Bridgeford v. Bridgeford*, 281 N.W.2d 583 (N.D. 1979). But to determine the nature of an ambiguous stipulation, a court examines the intent of the parties. *Clement v. Clement, supra; Matter of Estate of Gustafson*, 287 N.W.2d 700 (N.D.1980). When the language of a provision is clear, no other evidence is to be considered. *Matter of Estate of Gustafson, supra.*

■ In the present case the word *alimony* in provision 10 does not indicate the parties' intent. This court has frequently stated that the word *alimony* is ambiguous because the word may denote either property distribution or spousal support. See, e.g., *Coulter v. Coulter*, 328 N.W.2d 232 (N.D.1982); *Urlaub v. Urlaub*, 325 N.W.2d 234 (N.D.1982); *Jochim v. Jochim*, 306 N.W.2d 196 (N.D.1981). In interpreting the action of Carole's attorney, the district court stated that if John had sought modification of the award of alimony Carole may have argued that the word *alimony* referred to property division, thus prohibiting any modification. See *Mees v. Mees*, 325 N.W.2d 207 (N.D.1982).

■ Spousal support may be for a definite period of time to aid a disadvantaged party in acquiring new skills or it may be permanent to provide maintenance for a party incapable of rehabilitation. See, e.g., *Smith v. Smith*, 326 N.W.2d 697 (N.D. 1982); *Briese v. Briese*, 325 N.W.2d 245 (N.D.1982); *Rust v. Rust*, 321 N.W.2d 504 (N.D.1982). A monthly payment usually suggests spousal support, but it can also be a method of payment for property distribu-

tion. See *Sinkler v. Sinkler*, 49 N.D. 1144, 194 N.W. 817 (1923).

■ Provision 10 states that the monthly payments will not terminate upon the remarriage or death of either party. Although proof that the obligee has remarried establishes a prima facie case that spousal support should terminate, the obligee may continue to receive spousal support if extraordinary circumstances justify its continuance. See *Nastrom v. Nastrom*, 262 N.W.2d 487 (N.D.1978), 276 N.W.2d 130 (N.D.1979), 284 N.W.2d 576 (N.D.1979); *Nugent v. Nugent*, 152 N.W.2d 323 (N.D. 1967). Remarriage of the obligor does not terminate the duty of spousal support. The provision for continuance even after remarriage of either spouse thus does not clearly indicate the parties' intent.

■ The statement that payments would not terminate after Carole's death does, however, suggest property distribution. The obligor's death does not necessarily terminate the payment of a property distribution or of spousal support. See *Matter of Estate of Gustafson, supra; Stoutland v. Stoutland's Estate*, 103 N.W.2d 286 (N.D.1960). An obligee's death, however, does end the need for the rehabilitation or permanent maintenance, the purposes of spousal support. If payments of spousal support were to continue, any money owed to the obligee would pass to the obligee's estate. To be spousal support a provision in a divorce judgment must effectuate to the purposes of spousal support. The provision that payments were to continue after Carole's death therefore indicates property division.

■ In determining the nature of provision 10, we read it in context of the decree itself. Provision 11 reveals that the $25,-000 payment is secured because Carole is to execute and deliver instruments necessary for property division upon receipt of the $25,000 payment. Although the securing of the debt for $25,000 may suggest by contrast that the failure to secure the monthly payments indicates that the latter constitutes spousal support, we believe that

provision 10 is more like a division of property than a form of spousal support. A determination of the net value of the property owned by the parties would assist us in resolving whether or not the divorce decree was a final determination of property rights, but a district court in uncontested divorce actions need not ascertain the net value of the property. See *Fleck v. Fleck, supra.*

■ In the present case the same judge presided during the divorce and contempt proceedings. The judge had the opportunity to view the demeanor and ascertain the credibility of the parties. Although the interpretation of a contract is a matter of law for the court, we recognize the judge's opportunity to examine the difficult issue of intent in the context of the parties' demeanor and credibility. We do not believe that the district court erred in determining that provision 10 denotes property division.

Carole argues that even if the payments constituted property division, the district court nevertheless had jurisdiction to enforce the divorce decree by civil contempt after John claimed the exemptions provided by Chapter 28–22, N.D.C.C. In *Dvorak v. Dvorak, supra,* this court stated that contempt proceedings would not lie when a party sought to enforce a judgment for the distribution of property. We recognized that the sums of money due can be collected through the process of execution. Carole argues that because the writ of execution on John's property was returned unsatisfied, the sums of money due under the divorce judgment cannot be collected through the process of execution; and because the sums were not collected, civil contempt is a proper remedy.

■ We disagree with Carole's interpretation of *Dvorak, supra,* which construes Section 27–10–03. Section 27–10–03 implies that civil contempt and execution are mutually exclusive procedures for enforcement of a judgment. A property distribution is enforceable by execution on the judgment. *Dvorak, supra.* When a writ of execution is returned unsatisfied, a party may later execute on the debtor's prop-

erty because the remedy remains available for 10 years after the entry of the judgment. See Section 28–21–01, N.D.C.C. We therefore conclude that under our current statutes civil contempt is an improper remedy for the enforcement of a distribution of property.

In the alternative Carole contends that the exemption statutes of Chapter 28–22 do not apply to judgments entered in divorce proceedings. When Carole sought to enforce the judgment by execution, John claimed the exemptions provided by Sections 28–22–02 and 28–22–03, N.D.C.C. John claimed as exempt the property he received from the property distribution.

■ Exemption statutes are remedial and are to be liberally construed to effectuate the purposes of their enactment. *Falconer v. Farmers U. Oil Co.,* 260 N.W.2d 1 (N.D.1977); *Dieter v. Fraine,* 20 N.D. 484, 128 N.W. 684 (1910). Exemption statutes have two major objectives: to provide a fresh start for the debtor who is being sued and to aid society by reducing the number of debtors who need public assistance. See 35 C.J.S. *Exemptions* § 2. In 1979 the Legislature broadened the scope of the exemptions by granting to single persons the right to claim absolute exemptions that were otherwise available only to the head of a family. See 1979 N.D.Sess.Laws, Ch. 370, § 2.

■ The Legislature has specified under what circumstances exemptions are inapplicable. Subsection 7 of Section 28–22–02 provides for a homestead exemption as defined by law. Section 47–18–04, N.D.C.C., specifies the four situations in which a party may not claim the homestead exemption. Subsection 10 of Section 28–22–02 states that certain property may not be exempt from process, levy, or sale for taxes levied on it pursuant to Chapter 57–55. Although this case may involve obvious injustice, we recognize that the Legislature, not this court, is the proper body to amend the statutes governing this matter. It is for the Legislature to specify the exemptions which should be applicable in

proceedings to enforce the provisions of property division in a divorce judgment.

We do not find the appeal frivolous. See *Nissen v. City of Fargo*, 338 N.W.2d 655 (N.D.1983). We therefore deny John's request for damages and reasonable attorney fees pursuant to Rule 38, N.D.R.App.P.

The order is affirmed.

PEDERSON, Justice, concurring specially.

Someday, hopefully, an argument will be presented to a trial court in a divorce case that the marital assets should be equitably divided by awarding to the husband *his* share, and to the wife *her* share. Neither party will be labeled judgment creditor and neither will be labeled judgment debtor. There will be no resulting, unsolvable complications involving the law of bankruptcy, or execution and exemption, or contempt. Claims of waiver of the right to appeal by the acceptance of benefits will not be made. But this is not such a case, and so tradition and appellate rules compel me to concur in spite of the "obvious injustice" pointed out by Justice VandeWalle.