EDITH W. FARRINGTON *vs.* BOSTON SAFE DEPOSIT AND TRUST COMPANY, executor.

Suffolk.   March 10, 1932. — July 7, 1932.

Present: RUGG, C.J., CROSBY, WAIT, & FIELD, JJ.

*Marriage and Divorce*, Alimony.   *Equity Pleading and Practice*, Divorce proceedings in the Superior Court, Decree.   *Superior Court.*

In December, 1917, the Superior Court had jurisdiction and power in divorce proceedings to make a decree, which should be enforceable against the estate of the libellee after his death, that the libellee should pay to the libellant alimony during her life.

A decree of the Superior Court, made in 1917 in divorce proceedings, provided that the libellee should "pay to the libellant" a certain sum a month "during the term of her life, the first payment . . . to be made forthwith, the second payment . . . to be made on the first day of August, nineteen hundred and seventeen, and further payments of . . . [a stated amount] to be made on the first day of each and every month thereafter. If, however, said libellant shall re-marry during the term of her life, then said payments . . . shall cease upon said remarriage of said libellant."   The libellant survived the libellee and remained unmarried.   *Held*, that it was a reasonable inference that payments under the decree after the death of the libellee should be made out of the libellee's estate and be a charge thereon.

The libellant was entitled to enforce the decree above described irrespective of the fact that, contemporaneously with its entry, the libellee, with the knowledge of the court and as a part of the terms of settlement, executed a bond with a trustee for the libellant conditioned upon the making of alimony payments, the taking out of certain life insurance for her benefit, the conveyance of certain real estate to her and the making of testamentary provision for her; and such bond was not to be considered in construing the decree.

PETITION, filed in the Superior Court on November 3, 1931, for an execution against the estate of Robert D. Farrington to satisfy the provisions of a decree of alimony, described in the opinion.

The petition was heard in the Superior Court by *Fosdick*, J., and the decree was entered which is described in the opinion. The libellant, petitioner, appealed.

*C. D. Bent*, (*J. W. Healey* with him,) for the petitioner.

*C. F. Rowley*, for the respondent.

CROSBY, J. This is an appeal by the petitioner from a decree entered in the Superior Court on her petition to have an execution issue against assets in the hands of the executor of the estate of Robert D. Farrington for payments of alimony. The parties have agreed on all the material facts, have made the pleadings a part of the case, and have agreed that the court may draw proper inferences from the facts stated.

On November 28, 1911, the petitioner and Robert D. Farrington were married. On June 27, 1917, the petitioner, hereinafter referred to as the libellant or petitioner, obtained in the Suffolk Superior Court a decree for divorce from the libellee on the ground of adultery. The decree became absolute December 28, 1917. By this decree the libellee was ordered to convey certain real estate to the libellant; and it was further ordered that the libellee should pay to the libellant the sum of $416.66 a month "during the term of her life, the first payment . . . to be made forthwith, the second payment . . . to be made on the first day of August, nineteen hundred and seventeen, and further payments of . . . [$416.66] to be made on the first day of each and every month thereafter. If, however, said libellant shall re-marry during the term of her life, then said payments of . . . [$416.66] shall cease upon said re-marriage of said libellant." At the foot of the decree the following appears: "Assented to  Edith W. Farrington  Robert D. Farrington."

Simultaneously with the execution of said decree, to wit, on June 27, 1917, with the knowledge of the court and as a part of the terms of settlement the libellee executed and delivered to William A. Morse, trustee for the benefit of the libellant, a bond in the sum of $50,000 binding himself, his heirs, executors and administrators to its payment and conditioned that he, Robert D. Farrington, (1) deliver to

the libellant a deed of the above mentioned real estate; (2) release to the trustee for said Edith W. Farrington all his interest in the furniture, furnishings, and personal property on the premises with certain exceptions; (3) "Pay to said William A. Morse, as Trustee for said Edith W. Farrington, and his successors and assigns, the sum of . . . ($416.66) a month during the lifetime of said Edith W. Farrington . . . in compliance with the decree of the Superior Court . . . . If, however, said Edith W. Farrington shall marry again during the term of her life, then said payments . . . shall cease . . ."; (4) deliver to her a policy of insurance in the sum of $10,000 on the life of Robert D. Farrington, she to be the beneficiary therein, and he to pay the premiums thereon; (5) "Make full, adequate and complete provision by will, or deed of trust, or by purchase of an annuity for the payment of said sum of . . . ($416.66) monthly to said William A. Morse, Trustee, as aforesaid, and his successors and assigns, for a period of ten years after the death of the said obligor, Robert D. Farrington, if the said Edith W. Farrington be then living and shall not have re-married. If the said Edith W. Farrington shall re-marry or shall decease during said ten years then said payments shall cease upon said re-marriage or upon said decease."

The libellee died on November 4, 1930, as the result of a motor vehicle accident. By his will which was admitted to probate the Boston Safe Deposit and Trust Company was appointed executor. The will did not contain any provision to comply with clause 5 of the bond. The libellee during his lifetime had complied with all terms of the decree, except that he was in arrears in the payment due November 1, 1930. The payments were made to the trustee named in the bond. No payments under the decree or bond have been made since October, 1930. Farrington did not make any provision by will, trust deed, or annuity for the payments to the trustee required by the bond for ten years. However, he took out an insurance policy on his life for the benefit of the libellant upon which she has collected the sum of $10,000. At the time of his death he was

forty-six years of age and the libellant was forty-three years old. She is still living and unmarried.

The petition was granted as to the payment due November 1, 1930, but was dismissed as to payments alleged to be due from December 1, 1930, to October 1, 1931. This appeal presents the question of liability of the libellee's estate for payments under the divorce decree since his death. The executor contends that the decree entered in 1917 should be construed to mean that the monthly payments ordered were to be paid only by Farrington while living, and not to charge the assets of his estate for any payments after his death; that the estate is not bound to make any payments after the death of the libellee, but that the libellant's sole remedy is that to be asserted on her behalf by the trustee who is the obligee named in the bond.

It is settled in this Commonwealth that a decree for alimony whether temporary or permanent can be granted only so far as authorized by the statutes. *Parker* v. *Parker*, 211 Mass. 139, 141. It was said in *Rollins* v. *Gould*, 244 Mass. 270, at pages 272–273, that "The general purpose of alimony, whether temporary or permanent, is to enforce the legal duty of a husband to provide for the support of his wife. *Brown* v. *Brown*, 222 Mass. 415 . . . . Neither the decree, nor the agreement of March 18 contained any reference to the wife's rights upon the death of the husband." The general rule is well established in this Commonwealth that a husband's duty to pay alimony for the support of his wife ceases with his death. *Knapp* v. *Knapp*, 134 Mass. 353. *McIlroy* v. *McIlroy*, 208 Mass. 458. *Stone* v. *Duffy*, 219 Mass. 178, and cases cited at page 182. However, in none of the cases above referred to did the decree order the payment of alimony "during the . . . life" of the wife. The fact that the parties in the present case assented to the terms of the decree is not of importance; to decide otherwise would be on the theory that the court was decreeing specific performance of their contract. Moreover, an agreement between husband and wife as to alimony made even at the time of the entry of a decree

*nisi* would not be enforceable under G. L. c. 209, § 2, as contracts between them would be a nullity. *Oakes* v. *Oakes,* 266 Mass. 150. For this reason it is immaterial what the parties themselves had in mind when they assented to the decree. It is only the language of the court as embodied in the decree that is to be interpreted. The decree ordered that the libellee pay the libellant $416.66 a month "during the term of her life."

The court had power to decree that the payment of alimony should extend beyond the life of the libellee and that it could be collected out of assets of his estate. *Southard* v. *Southard,* 262 Mass. 278, 280, 281. In that case the decree for alimony in terms provided that "In the event of the death of the libellee during the life of the libellant before February 1, 1926, the amounts as above set forth shall be paid to the libellant out of his estate as a charge thereon. In the event of the death of the libellee during the life of the libellant after February 1, 1926, the sum of $583.33 shall be paid to the libellant out of the libellee's estate on the first day of each month as a charge thereon until further order of this Court." Although the decree in the present case does not expressly provide as in *Southard* v. *Southard* that the payments shall be made "out of the libellee's estate . . . as a charge thereon," it is a reasonable inference that such payments were to be so made. It was there said at pages 280–281: the parties "agreed upon the amount and extent of alimony. The court could in these circumstances decree that the alimony should extend beyond the lifetime of the libellee." That statement is equally applicable to the case at bar. The decree was not silent on the subject, but by reasonable implication provided that the payments should continue to be made during the term of the life of the libellant, notwithstanding the death of the libellee before the death of the libellant. Such is the obvious and natural meaning of the decree in this case.

The giving of the bond contemporaneously with the entry of the decree in no way affects the rights and obligations of the parties as established by the decree. The

libellant's rights under the decree did not end with the death of the libellee. If his estate were not held, how else could the libellant be paid "during the term of her life?" Payments under the decree manifestly were to continue until her death or remarriage, regardless of the death of the libellee. Counsel for the executor refer to the law as it existed when the decree was entered, and cite *Knapp* v. *Knapp*, 134 Mass. 353, *Stone* v. *Duffy*, 219 Mass. 178, and similar cases, to show that at the time the decree was entered, in 1917, the payment of alimony ceased upon the libellee's death; but in those cases the decree did not provide that such payment should continue during the life of the libellant. Accordingly, they are plainly distinguishable in their facts from the case at bar. In *Stratton* v. *Stratton*, 77 Maine, 373, the decree provided that alimony be paid according to an award of referees which determined that the husband should pay the wife "during her natural life, an annuity of" $250. At page 379, the court said: "Moreover, where the language of the decree expressly states that it is to continue after the death of the husband, the authorities hold that it will so continue." In *Storey* v. *Storey*, 125 Ill. 608, a decree entered with the consent of the parties ordered the husband to pay the wife $2,000 per year "for so long as she may be and remain sole and unmarried"; and at page 611, it was said that the "natural meaning is that alimony shall be paid for so long a time as Mrs. Storey shall remain unmarried whether before or after her husband's death." In the case at bar, if the judge intended that payments were to cease with the death of the libellee, it would be assumed that he would not have included in the decree a phrase that the payments were to be made "during the term of her life," for it could not be contended that in the absence of such phrase they would continue after the libellant's death, and hence its only function can be to show that the payments are to continue during the libellant's life regardless of the death of the libellee. The language of the decree indicates an intent to bind the libellee's estate. Many contracts are made wherein the predeceaser is named without reference to heirs

or assigns, yet it could not reasonably be contended that in case of his death his estate would not be bound. The intention of the judge in entering the decree in the present case was to allow the payments to continue during the libellant's life. This purpose by reason of the death of the libellee can be carried out only by binding his estate.

Although cases decreeing alimony to continue after the death of the husband may have been very unusual in 1917 when the decree in the present case was entered, still in none of the adjudicated cases in this Commonwealth did the decree order alimony to the wife "during the term of her life," and from the judge's evident purpose in the case here considered to secure payments to the libellant during her life or until remarriage it must be held that he intended to bind the husband's estate in the event of his predeceasing the former wife who still remained single. Notwithstanding that both parties contend that the language of the decree should be interpreted in the light of the provisions of the bond executed and delivered "Simultaneously with the execution of said decree . . . with the knowledge of the court . . .," we are of opinion that this contention cannot be sustained. The language of the decree alone is to be interpreted. The case is before us on a case stated. Although the parties have agreed that the court may draw inferences, this agreement is unnecessary, as the court has power to draw inferences of fact on appeal. G. L. c. 231, § 126. *Boston Lodge Order of Elks* v. *Boston*, 217 Mass. 176. There is nothing to show that the judge in the entry of the decree considered the provisions of the bond or that he ever read it.

The decree entered in the Superior Court holding that the executor of the estate of Robert D. Farrington is indebted to the libellant in the sum of $416.66 by reason of the payment due November 1, 1930, with interest on said sum to October 15, 1931, amounting to $23.95, making a total of $440.61, and that execution issue in said sum against the assets and estate of the libellee in the possession of the executor is affirmed. The remainder of the decree is reversed and a decree as modified is to be entered charging

the executor with the monthly payments of $416.66 due from December 1, 1930, to October 1, 1931, inclusive, together with interest on such payments from the date they became payable to October 1, 1931. As so modified the decree is affirmed.

*So ordered.*