Violet **STOUTLAND,** Plaintiff and Respondent,

v.

**ESTATE** of Oliver A. **STOUTLAND,** Deceased, by Mary E. Stoutland, Executrix (Mary E. Stoutland, Leonard John Stoutland, Oliver Andrew Stoutland, Jr., Joyce Violet Stoutland Wincek, and Luverne Diane Stoutland), Defendants and Appellants.

No. 7881.

Supreme Court of North Dakota.

May 26, 1960.

Wattam, Vogel, Vogel, Bright & Peterson, Fargo, for defendants and appellants.

Nilles, Oehlert & Nilles, Fargo, for plaintiff and respondent.

MORRIS, Judge.

This is an appeal from an order of the District Court of Cass County reversing on appeal an order of the County Court of Cass County entered in the matter of the Estate of Oliver A. Stoutland, deceased. The county court disallowed the claim of Violet Stoutland, divorced wife of Oliver A. Stoutland, for $10,234, of which $10,134 is claimed to be due or to become due during the life expectancy of the claimant under a decree of divorce. The latter sum represents alimony payments accruing after the death of Oliver A. Stoutland.

The facts are shown by stipulations and files of the county court which are in evidence. Violet Stoutland obtained a divorce from Oliver A. Stoutland on July 7, 1931. The ground was habitual intemperance. Three children were born to that marriage, the youngest of whom is about 27 years of age. Oliver A. Stoutland remarried; Violet Stoutland remained unmarried. He died May 26, 1954, while serving as a Lieutenant Commander in the United States Navy. He is survived by his divorced wife, his three children by the first marriage, his widow, and a daughter by the

second marriage who is over 18 years of age.

The record discloses no property settlement or agreement between the parties with respect to alimony in the divorce action. The decree required the defendant to pay the plaintiff $25 per month support for each of the children until each child reached the age of 18 years. It also provided:

"That the defendant pay to the plaintiff the sum of $50.00 on the first of each and every month commencing with the First day of August, 1931, as alimony, said payments to continue until the remarriage of said plaintiff or her death; * * *."

The claim against the estate for alimony payments due subsequent to the death of Oliver A. Stoutland is the sole source of this controversy.

The order of the district court from which the appeal to this court is taken directs:

"(1) That the Order of the County Court dated June 9, 1955, on which this appeal is based be reversed.

"(2) That in the event that an appeal is not taken within the statutory time allowed therefor from this Order, that the case be remanded to the Cass County Court at Fargo, North Dakota, with instructions that the alimony claim of Violet Stoutland duly filed against the estate of Oliver A. Stoutland be allowed at the rate of $50 per month from and after May 26, 1954, down to the present time, and in addition thereto, that said payments be continued by said estate to the claimant, Violet Stoutland, at the rate of $50 per month until the remarriage of Violet Stoutland or her death, and that all of said payments be and constitute a charge against the assets of said estate."

There are two points to be considered. The first is the construction to be

given to Section 14–0524, NDRC 1943, and the second is the construction and effect of the provision in the decree of divorce awarding alimony. Section 14–0524, NDRC 1943, provides:

"When a divorce is granted, the court shall make such equitable distribution of the real and personal property of the parties as may seem just and proper, and may compel either of the parties to provide for the maintenance of the children of the marriage, and to make such suitable allowances to the other party for support during life or for a shorter period as to the court may seem just, having regard to the circumstances of the parties respectively. The court from time to time may modify its orders in these respects."

It is argued that the phrase "support during life" is susceptible to the construction that it means the life of both parties and that upon the death of either party the right to alimony ceases. The history of the statute as well as the context of the phrase renders this contention untenable.

Section 14–0524 had its origin in Section 73 of the Civil Code of the Territory of Dakota. It provided that where a divorce was granted for the offense of the husband, the court might compel him to provide for the maintenance of the children of the marriage, "and to make such suitable allowance to the wife for her support during her life, or for a shorter period, as the court may deem just, * * *." Revised Codes, Dakota Territory, 1877, Section 73. This provision was carried into the statutes of the State of North Dakota. See Section 2761, Revised Codes of North Dakota 1895, and Section 4073, Revised Code 1905.

■ In State ex rel. Hagert v. Templeton, 18 N.D. 525, 123 N.W. 283, 25 L.R.A., N.S., 234, this court held that district courts in matters relating to divorce and alimony do not have general equitable powers but

their jurisdiction in this respect is conferred by statute, and that "Alimony, suit money, and counsel fees cannot be allowed to the husband in this state." The court also pointed out that it would be proper for the legislature to allow the husband alimony in recognition of his wife's liability to support him but that the courts were without power to do so.

State ex rel. Hagert v. Templeton, supra, was decided in November 1909. The legislature, by Chapter 184, Session Laws N. D.1911, conferred upon the court discretion to require either party to pay alimony and money for the support of the other party or the children of the marriage. It amended several sections of the statute, including the one under discussion, and in the same language as that used in the present statute directed the court to "make such suitable allowances to the other party for support during life or for such a shorter period as to the court may seem just, * * *." The purpose of the amendment was to empower the court to award alimony for support to either the husband or the wife. It did not affect the period of time for which alimony could be allowed. We reach the conclusion that the statute authorizes the court to direct the payment of alimony or support during the life of the recipient or for a shorter period.

We now take up the provision of the decree and its effect. It stated that the payments of $50 per month were "to continue until the remarriage of said plaintiff or her death." When the court provided that the payments continue until the plaintiff's death, he made an allowance to her for support during her life as the statute authorized, and when he provided as a contingency the alternative termination on her remarriage he provided for her support for an alternate shorter period that would become effective in the event she remarried.

■ It is the general rule that in the absence of an agreement between the parties or a statute providing otherwise, periodic payments of alimony terminate upon the

husband's death where the decree is silent as to the duration of the payments. 27A C.J.S. Divorce § 240b; 17 Am.Jur., Divorce and Separation, Secs. 700 and 702; Annotations, 18 A.L.R. 1040; 39 A.L.R.2d 1406.

The many and varied forms of statutes and decrees pertaining to the termination of alimony payments have presented vexing questions to many courts. Ex parte Hart, 94 Cal. 254, 29 P. 774, decided in 1892, involved a decree of divorce rendered under California Civil Code, Section 139, which was identical to our original statute Section 2761, R.C.1895. The petitioner was imprisoned for contempt of court because of his refusal to pay alimony awarded to his divorced wife by the decree of divorce. He contended that his imprisonment was unlawful because the decree was void by reason of the fact that it did not specify the period during which alimony was to be paid. The court said:

"As I construe the decree, it intends the payment of alimony to continue during the life of the plaintiff in the divorce suit, or until modified by the court. Such a decree the court had power to make in granting a divorce for the offense of the husband."

In Stratton v. Stratton, 77 Me. 373, 52 Am.Rep. 779, the divorce decree gave alimony to the wife "during her natural life." An action was brought against the husband's administrator to recover installments due both before and after his death. On appeal it was determined that the decree:

"gave alimony to the wife 'during her natural life.' That the court has the power to do so, where it may be granted at all, seems to be very strongly implied by the terms of the statute which provide that the court may order so much of the husband's real estate, or the rents and profits thereof as is necessary, to be assigned and set out to the wife for life. Moreover, where the language of the decree expressly states that it is to continue after the death of

the husband, the authorities hold that it will so continue."

In Wides v. Wides, 300 Ky. 344, 188 S.W.2d 471, 473, a judgment in a divorce action provided for the continuance of a payment of $40 per month "during the lifetime of the said Leah O. Wides, or as long as she remains unmarried." The court held there was no ambiguity as to the extension or termination of the payments provided by the decree and that those payments accruing after the death of her former husband during her lifetime and so long as she remained unmarried were a proper charge against the estate. The court also pointed out that the divorced wife was not entitled to accelerate or have the payments commuted to their present value based on her life expectancy and as such paid as a claim because she might collect the commuted value one day and marry the next. The court remarked that:

"Although it may require indefinite postponement of Wides' estate, nevertheless if the parties cannot agree upon a settlement, some arrangement must be made to have the estate administered so as to provide for these periodical payments."

We regard the case of Farrington v. Boston Safe Deposit & Trust Company, 280 Mass. 121, 181 N.E. 779, as directly in point. A decree of absolute divorce was granted to Edith W. Farrington, libellant, against Robert B. Farrington, libellee, which ordered him to convey certain real estate to her and further ordered that he pay her a certain monthly sum:

"during the term of her life, the first payment * * * to be made forthwith, the second payment * * * to be made on the first day of August, nineteen hundred and seventeen, and further payments * * * to be made on the first day of each and every month thereafter. If, however, said libellant shall re-marry during the term of her life, then said payments * *

shall cease upon said re-marriage of said libellant."

After Farrington's death, Mrs. Farrington, who had not remarried, brought an action against the executor of her former husband's estate for payments alleged to have become due after death, thus squarely presenting the question of liability of the estate for payments under the divorce decree since Farrington's death. The court stated that it was settled in the Commonwealth of Massachusetts that alimony can be granted only so far as is authorized by the statutes and that the general rule is that a husband's duty to pay alimony for the support of his wife ceases at his death. It also stated that it was the law of that state that the court had power to decree that the payment of alimony should extend for the life of the libellee and that it could be collected out of the assets of his estate. The court then construed the decree and said:

"The decree was not silent on the subject, but by reasonable implication provided that the payments should continue to be made during the term of the life of the libellant, notwithstanding the death of the libellee before the death of the libellant. Such is the obvious and natural meaning of the decree in this case. The giving of the bond contemporaneously with the entry of the decree in no way affects the rights and obligations of the parties as established by the decree. The libellant's rights under the decree did not end with the death of the libellee. If his estate were not held, how else could the libellant be paid 'during the term of her life?' Payments under the decree manifestly were to continue until her death or remarriage, regardless of the death of the libellee. * * * In the case at bar, if the judge intended that payments were to cease with the death of the libellee, it would be assumed that he would not have included in the decree a phrase that the payments were to be made 'during the term of her life,' for it could not be contended that in the absence of such phrase they would continue after the libellant's death, and hence its only function can be to show that the payments are to continue during the libellant's life regardless of the death of the libellee. The language of the decree indicates an intent to bind the libellee's estate. Many contracts are made wherein the predecessor is named without reference to heirs or assigns, yet it could not reasonably be contended that in case of his death his estate would not be bound. The intention of the judge in entering the decree in the present case was to allow the payments to continue during the libellant's life. This purpose by reason of the death of the libellee can be carried out only by binding the estate."

We also cite as supporting in some measure the contention of Violet Stoutland the following: Murphy v. Moyle, 17 Utah 113, 53 P. 1010, 70 Am.St.Rep. 767; Babcock v. Babcock, 147 Misc. 900, 265 N.Y.S. 470; Hale v. Hale, 108 W.Va. 337, 150 S.E. 748.

A list of cases bearing on the subject under consideration would be incomplete without reference to Pingree v. Pingree, 170 Mich. 36, 135 N.W. 923, 927. The case involved an application for the modification of a divorce decree with respect to alimony made after the death of the husband. In the opinion it is said:

"In Maslen v. Anderson, 163 Mich. 477, 128 N.W. 723, a decree of divorce was granted, and alimony was given to the wife payable to her monthly as long as she should live and remain unmarried. Later Mr. Anderson died, and the executor of his estate attacked the divorce decree upon numerous grounds. The court discusses at length the jurisdiction of circuit courts in chancery in alimony cases, and holds it is strictly statutory. The court found that some things were included in the divorce decree that the court had no jurisdiction to include. But

also held that 'we are satisfied with the decree of the court below in so far as it deals with the subject of alimony to be paid to Louisa A. Anderson.' It will be remembered that this alimony was payable monthly during the life of Mrs. Anderson unless she remarried, and the case was decided after Mr. Anderson's death. The language of the statute which appears in the opinion of Brown v. Brown, supra, (135 Mich. 141, 97 N.W. 396) is not ambiguous. It and the opinions from which we have quoted justify the modification of the decree as to alimony after the death of the husband."

In Johnson v. Every, Fla., 93 So.2d 390, 392, the majority of the court says:

"We subscribe to the proposition that in the absence of an express contract or a provision in a decree such as the one before us, a divorced husband's liability for alimony terminates with his death. On the other hand, where the decree or property settlement agreement expressly provides for the continuance of the payments 'until the death of the wife' then the husband's estate remains liable for the obligation in the same manner as it is liable for any other legitimate obligation outstanding at the time of his death."

We are not unmindful of the case of Foster v. Foster, 195 Va. 102, 77 S.E.2d 471, 472, 39 A.L.R.2d 1397, wherein it is held that a court of chancery in Virginia, entering a decree for absolute divorce, does not have the power in the absence of a stipulation or contract between the parties to extend alimony payments beyond the death of the husband. The decree in that case provided that the defendant,

"pay to the plaintiff $125.00 each month for alimony until her death or remarriage, in either of which events said payments shall cease and no longer be a charge against defendant."

In construing the decree the court said that it did not expressly or by fair implication direct the payment of alimony after the death of the husband. As pointed out in the opinion, Virginia has not provided statutory authority for the rendition of a divorce decree binding the husband's estate as to alimony payments. The decree was construed so as to render it valid rather than void in this respect.

In view of the legislative authority provided by Section 14–0524, NDRC 1943, to decree the payment of alimony during the life of the recipient or for a shorter period, and our interpretation of the decree, and in accordance with what we believe to be the weight of authority, we reach the conclusion that the right of the plaintiff to receive alimony payments did not terminate with the death of her former husband. The order appealed from is affirmed.

SATHRE, C. J., and STRUTZ, TEIGEN and BURKE, JJ., concur.