In the Matter of the Estate of Earl R. GUSTAFSON, Deceased.

Alice L. GUSTAFSON, Claimant [Respondent Below] and Appellant,

v.

Shirley GUSTAFSON, Personal Representative of the Estate of Earl R. Gustafson, Deceased, Respondent [Appellant Below] and Appellee.

Civ. No. 9662.

Supreme Court of North Dakota.

Jan. 10, 1980.

Rehearing Denied Jan. 24, 1980.

Robert A. Keogh, Dickinson, for claimant [respondent below] and appellant.

Gerald D. Galloway and Bruce R. Howe, of Reichert, Howe, Hardy, Galloway & Jorgensen, Dickinson, for respondent [appellant below] and appellee; argued by Howe.

VANDE WALLE, Justice.

Alice L. Gustafson appeals from a judgment entered by the Stark County District Court on July 11, 1979, which reversed an order entered by the Stark County Court of Increased Jurisdiction granting Alice L. Gustafson a continuing claim against the estate of Earl R. Gustafson for alimony that had been awarded by the district court in a divorce proceeding.

The judgment of the district court is reversed and the case is remanded with direction to affirm the order of the Stark County Court of Increased Jurisdiction.

Alice Gustafson and Earl Gustafson were married in 1940 and were divorced on December 15, 1970. Prior to the divorce, the parties entered into a property-settlement agreement which was incorporated into the

judgment of divorce. This agreement provided that Alice Gustafson would receive the house, a car, $5,500 in exchange for her interest in a cabin site, and $325 per month as alimony. Earl Gustafson was to retain his interest in farm property that he had inherited from his father and his interest in Parkway Ford, Inc. The property was divided pursuant to the agreement and Earl began paying alimony. Following the divorce, Earl married Shirley Gustafson, who now serves as the personal representative of the estate.

Earl Gustafson made all alimony payments as required until he died. No alimony payments have been made since his death. Alice Gustafson filed a claim against Earl Gustafson's estate, which was being probated in the Stark County Court of Increased Jurisdiction. Following a hearing, the Stark County Court entered an order directing that the alimony payments be made as a continuing charge against the estate.

Shirley Gustafson, as personal representative, appealed this order of the county court to the Stark County district court. The district court interpreted the judgment of divorce to mean that alimony payments would cease at Earl Gustafson's death and reversed the order of the county court granting Alice Gustafson a continuing claim against Earl Gustafson's estate for alimony.

Alice Gustafson now appeals from this judgment of the district court.

■ At common law, the death of the husband put an end to the payment of alimony in a divorce *a mensa et thoro.* The reason for this was that a divorce *a mensa et thoro* did not fully terminate the marriage relationship, but provided only for a separation from bed and board. The wife still retained all her marital interests in her husband's property so that at his death the alimony was succeeded by the usually larger provision received from his estate. *Sto-*

*rey v. Storey,* 125 Ill. 608, 18 N.E. 329 (1888); 24 Am.Jur.2d, *Divorce and Separation,* § 525.

■ Under present North Dakota law, "The effect of a judgment decreeing a divorce is to restore the parties to the state of unmarried persons, . . ." Sec. 14–05–02, N.D.C.C. Thus the parties by divorce give up the right they gained through marriage to share in the estate of their spouses. The surviving spouse no longer receives by law a share of the decedent's estate that would supersede alimony payments, so that the common-law rationale for denying alimony after the death of the husband no longer exists.

Whether or not alimony payments must terminate upon the husband's death under present North Dakota law was considered in *Stoutland v. Stoutland's Estate,* 103 N.W.2d 286 (N.D.1960). There, this court held:

"Where a divorce decree directs the defendant to pay monthly alimony to the plaintiff and provides 'said payments to continue until the remarriage of said plaintiff or her death,' without qualification, the payments accruing after the death of the defendant become payable out of the estate of defendant as they become due." Syllabus, ¶ 4.[1]

In reaching the conclusion that the payments would not terminate upon the husband's death, this court was mindful of the general rule that in the absence of an agreement between the parties or a statute providing otherwise, periodic payments of alimony terminate upon the husband's death where the decree is silent as to the duration of those payments. *In re Roberts' Estate,* 257 Iowa 1, 131 N.W.2d 458 (1964); *North v. North,* 339 Mo. 1226, 100 S.W.2d 582 (1936); 24 Am.Jur.2d, *Divorce and Separation,* §§ 642–643. But in *Stoutland* this court found statutory authority in Section 14–0524, N.D.R.C.1943,[2] for allowing the

1. Because the present action involves the payment of alimony by a husband to a wife we discuss the issue in those terms. However, our decision would be the same had the wife been

ordered to pay alimony instead. Sec. 14–05–24, N.D.C.C.; *Stoutland, supra.*

2. This statute is the same as the present Section 14–05–24, N.D.C.C., which provides:

continuance of payment during the life of the recipient whether or not the party charged with making payments was alive.

The court went on to consider whether or not the divorce decree had indeed provided for the payment of alimony after the death of the husband by the inclusion in the decree of the phrase "said payments to continue until the remarriage of said plaintiff or her death." In considering this phrase, the court discussed cases from several jurisdictions in which similar language was interpreted. The case of *Farrington v. Boston Safe Deposit & Trust Co.*, 280 Mass. 121, 181 N.E. 779 (1932), was regarded as being directly in point. In interpreting similar language the Massachusetts court stated:

"In the case at bar, if the judge intended that payments were to cease with the death of the libellee, it would be assumed that he would not have included in the decree a phrase that the payments were to be made 'during the term of her life,' for it could not be contended that in the absence of such phrase they would continue after the libellant's death, and hence its only function can be to show that the payments are to continue during the libellant's life regardless of the death of the libellee. The language of the decree indicates an intent to bind the libellee's estate. Many contracts are made wherein the predecessor is named without reference to heirs or assigns, yet it could not reasonably be contended that in case of his death his estate would not be bound. The intention of the judge in entering the decree in the present case was to allow the payments to continue during the libellant's life. This purpose by reason of the death of the libellee can be carried out only by binding his estate." 280 Mass. at 126–127, 181 N.E. at 781.

"When a divorce is granted, the court shall make such equitable distribution of the real and personal property of the parties as may seem just and proper, and may compel either of the parties to provide for the maintenance of the children of the marriage, and to make such suitable allowances to the other party for support during life or for a shorter period as to the court may seem just, having regard to the circumstances of the parties respectively. The court from time to time may modify its orders in these respects."

The terms "alimony" and "support" have the same meaning for the purpose of this statute . See, e. g., *Stoutland, supra*; 24 Am.Jur.2d, *Divorce and Separation*, § 514.

In view of the legislative authority provided by Section 14–0524, N.D.R.C.1943, and this court's interpretation of the decree, it was concluded in *Stoutland* that the right to receive alimony payments did not terminate upon the death of the former husband.

In the case at hand, the provision relating to alimony was part of a property-settlement agreement entered into by Earl Gustafson and Alice Gustafson that was incorporated into the judgment of divorce. This agreement provided, in part:

"(6) That the Plaintiff as her share of the personal and real property of the marriage has exclusive title to the following:

"(d) That the Defendant pay to the Plaintiff the sum of Three Hundred Twenty-five Dollars ($325.00) per month as alimony payable as of January 1, 1971, and the first day of each month thereafter, said alimony payments to terminate upon the remarriage or death of the Plaintiff or until the further Order of the Court."

The district court considered the award of alimony to be part of the property settlement, and we agree. The term "alimony" was not used in its technical sense in the property-settlement agreement, but instead referred to cash payments made to Alice Gustafson as part of her share of the property of the marriage. Because the provision for alimony payments to Alice Gustafson was part of the property-settlement agreement entered into by the parties, we look to the rules of contract interpretation found in Chapter 9–07, N.D.C.C., to determine whether or not the parties intended at the time the property-settlement agreement was reached to have the alimony payments cease upon Earl Gustafson's death.

Section 9–07–04, N.D.C.C., provides:

"When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone if possible, subject, however, to the other provisions of this chapter."

■ The district court did not ascertain the parties' intent from the writing itself, but allowed testimony as to the parties' understanding of the language. We hold this to be error. Testimony on the parties' intent should have been considered only if the language of the agreement was ambiguous and unclear so that the intent could not be ascertained from the instrument. The language used in the property-settlement agreement under consideration here is clear and unambiguous.

■ The property-settlement agreement, as incorporated in the judgment of divorce, provided that "said alimony payments [were] to terminate upon the remarriage or death of the Plaintiff    .    ." This language is similar to that found in the divorce decree considered in *Stoutland, supra,* wherein this court held that "payments to continue until the remarriage of said plaintiff or her death," meant that the plaintiff's right to receive alimony did not terminate with the death of her former husband. In line with this court's interpretation in *Stoutland, supra,* and the interpretation placed upon similar phrases by other jurisdictions cited in *Stoutland,* we hold that the language used by the parties requires the payments to continue after Earl Gustafson's death. Because the language was clear, it should have governed the district court's interpretation. Sec. 9–07–02, N.D. C.C. That this was the parties' intent is also supported by language in the settlement agreement to the effect that Alice Gustafson was to receive the alimony, among other things, as her share of the marriage property. Her right to share in the property of the marriage would not have been contingent upon her former spouse's remaining alive. See *Nastrom v. Nastrom,* 262 N.W.2d 487 (N.D.1978).

The district court's decision to deny the continuation of alimony was influenced by its conclusion that the provision for alimony

in paragraph (6)(d) of the property-settlement agreement was qualified by paragraphs (4) and (5) of that same agreement, as incorporated in the judgment of divorce. These paragraphs provided:

"(4) That each of said parties have an immediate right to dispose of or bequeath by Will his or her respective interests in and to any and all property belonging to him or her, from and after the date hereof, and the said right extends to all of the aforesaid future acquisitions of property as well as to all property set over to either of the parties hereto under this Agreement.

"(5) That the parties have no right to the estate of the other left at his or her death and [each] has no right to share in the estate of the other by the laws of succession and that neither of the parties has the right to be the administrator or administratrix or executor or executrix of the estate of the other and neither has the right to inherit under the Will of the other and neither party has any right of homestead in the real property of the other, and neither party has any rights to the estate or any interest in the estate of the other for family allowance by way of inheritance, and they have all rights of single persons only and the relation to each other as such any disinterested party as regards to any financial property matters."

■ Alice Gustafson is not seeking to share in the estate of Earl as a wife would be entitled to share under the laws of succession, nor is she seeking to impinge in any way upon his right to dispose of his estate as he saw fit. She is seeking only the alimony payments, which are not part of Earl Gustafson's estate but are, in part, her share of the marriage property as agreed to by the parties. The right to these payments is not qualified by paragraphs (4) and (5) of the property-settlement agreement which concern only claims against the estate of the former spouse.

Furthermore, provisions in a contract, including a property-settlement agreement, are to be read together so as to give effect

to every part if reasonably practicable. Sec. 9–07–06, N.D.C.C. To read paragraphs (4) and (5) of the property-settlement agreement as a limitation on paragraph (6)(d) of that agreement does not give effect to the latter paragraph. Paragraph (6)(d) of the agreement is concerned specifically with alimony payments, whereas paragraphs (4) and (5) are general statements concerning immediate disposition of the property of the parties and claims against their estates. If there is a conflict between a specific provision and a general provision in a contract, the specific provision qualifies the general provision. Sec. 31–11–05(25), N.D.C.C.; 17A C.J.S. *Contracts* §§ 313–314; 17 Am.Jur.2d, *Contracts,* § 270.

In view of our holding that the alimony payments were in the nature of a property settlement, together with this court's interpretation of similar language in *Stoutland, supra,* and our holding that paragraphs (4) and (5) of the Gustafsons' property-settlement agreement do not qualify paragraph (6)(d) of that agreement, we conclude that the alimony payments should not have ceased upon Earl Gustafson's death.

The judgment of the district court is reversed and the case is remanded with the direction that the judgment of the Stark County Court of Increased Jurisdiction be affirmed.

ERICKSTAD, C. J., and PAULSON and SAND, JJ., concur.

PEDERSON, Justice, dissenting.

Without considering all of the other theoretical and practical problems involved in this case, it is my view that when Earl and Alice Gustafson agreed that alimony payments would terminate when Alice remarried or died, or when there was a "further Order of the Court," the termination could be by order of the court when Earl died. The estate should only be obligated to make the $325.00 per month payments from Earl's death, March 18, 1978, until the date of the order of the court, July 11, 1979.