BARBARA COHAN vs. CURT FEUER, administrator,[1] & others.[2]

No. 01-P-1367.

Middlesex. February 3, 2003. - May 29, 2003.

Present: GREENBERG, DOERFER, & KAFKER, JJ.

Further appellate review granted, 439 Mass. 1109 (2003).

*Divorce and Separation,* Alimony, Death of party. *Contract,* Settlement agreement. *Words,* "Until death or remarriage."

Where, in an action to enforce a support order entered in an earlier divorce proceeding, the parties had entered into a stipulation entitling the wife to alimony "until [her] death or remarriage," the wife was entitled to continuing alimony payments until her death or remarriage, notwithstanding the death of her former husband. [224-226]

CIVIL ACTION commenced in the Superior Court Department on November 24, 1998.

Motions for summary judgment were heard by *Diane M. Kottmyer,* J., and entry of a separate and final judgment was ordered by *Regina L. Quinlan,* J.

*Shannon M. Fitzpatrick* for the plaintiff.

*John M. Reed* for the interveners.

*Evans Huber,* for the defendant, was present but did not argue.

GREENBERG, J. Pursuant to a New Jersey judgment of divorce that took effect on July 17, 1973, Barbara Cohan (Barbara) was awarded $540 in monthly alimony payments and $460 in monthly payments for the support and maintenance of their three minor children. Thereafter, Henry H. Cohan (Henry), her former husband, now deceased, failed to make the required payments and was jailed in New Jersey for contempt. To avoid payment, Henry left New Jersey and eventually relocated to Massachusetts.

In 1977, when Henry's whereabouts became known to

---

[1]Of the estate of Henry H. Cohan.

[2]Rebecca M. Cohan, Benjamin A. Cohan, and Tikvah S. Portnoi, interveners.

Barbara, she initiated proceedings under G. L. c. 273A (Uniform Reciprocal Enforcement of Support Act[3]) and obtained an enforcement order against him. About five years later, and without an evidentiary hearing, a judge of the District Court modified the order so that Henry's alimony payment was reduced. Dissatisfied with the modification, Barbara sought, in the same District Court, restoration of the original amount of alimony contained in the New Jersey decree. As a result, on February 23, 1983, the parties entered into a stipulation that Henry would pay $150 per month for child support until June, 1984, and alimony in the amount of $475 per month *"until the death or remarriage of [Barbara]"* (emphasis supplied). Consideration for the agreement was Barbara's waiver of her claim for reinstatement of the amounts contained in the New Jersey decree. Both parties were represented by counsel, and the handwritten stipulation was approved by a judge of the District Court.

Henry died in 1998, and Barbara sought a declaration in the Superior Court that the 1983 stipulation entitled her to continuing alimony payments until her death or remarriage, notwithstanding the death of her former husband. The administrator of Henry's estate opposed such an outcome, as did Henry's heirs, all of whom joined the action as interveners. Both sides moved for summary judgment. The motion judge ruled for Henry's estate and heirs, and Barbara appeals.[4]

It is well established that "liability for alimony imposed by a decree of court ceases with the death of the husband if the decree is silent on the subject of continuation." *Taylor* v. *Gowetz*, 339 Mass. 294, 297 (1959). However, a decree may require that payments continue beyond the paying spouse's death, see *Farrington* v. *Boston Safe Deposit & Trust Co.*, 280 Mass. 121, 125

---

[3]By St. 1995, c. 5, § 87, Massachusetts adopted the Uniform Interstate Family Support Act as chapter 209D of the General Laws. The problems of interstate establishment, modification, and enforcement of child support under an enhanced long-arm statute have been made somewhat easier than under the older procedures of the Uniform Reciprocal Enforcement of Support Act.

[4]The motion judge based her decision in large part on the original New Jersey decree; however, that decree is not in the record, and the parties agreed at oral argument that they were not relying on it or on New Jersey law in any way. We confine ourselves to the record and arguments before us.

(1932), and the parties may agree to the same in a settlement contract, see *Taylor* v. *Gowetz, supra* at 298.

In *Farrington*, the decree stated that alimony payments were to be made to the wife "during the term of her life" or until she should remarry. *Farrington* v. *Boston Safe Deposit & Trust Co., supra* at 122. The court held that this language unambiguously required payments to continue after the death of the paying spouse: "If his estate were not held; how else could the [wife] be paid 'during the term of her life?' " *Id.* at 126. In *Taylor*, the parties authored a separation agreement stating that monthly payments were to continue "so long as the wife is living and remains unmarried." *Taylor* v. *Gowetz, supra* at 296. The court determined that this language, too, unambiguously required that payments continue so long as the wife was living and remained unmarried, notwithstanding the death of the husband. See *id.* at 298-300. In *DuMont* v. *Godbey*, 382 Mass. 234, 239 (1981), the parties stipulated that the husband would pay alimony "for the Wife's support alone; payable until both children reach the age of [twenty-three]. . . . In the event of the Wife's remarriage, all alimony payments for her sole support shall cease forthwith." Although the question was not before the court in *DuMont*, it stated that the *Farrington* and *Taylor* cases "strongly suggest" that this language also required alimony payments to continue after the husband's death, as the children were not yet twenty-three, and the wife had not remarried. *Id.* at 239-240.

These decisions have established that where the decree or stipulation is entirely silent as to duration, the court will fill that void with a default assumption that the payor's death terminates the obligation; but where duration is addressed, there is no void to fill, and the meaning of the plain language chosen by the court or the parties governs. In this case, the parties agreed that the payments "shall cease upon the death or remarriage of [Barbara]." Because the parties established the circumstances under which the payments would cease, there is no call for the court to import terms. Barbara has neither died nor remarried, and therefore Henry's estate is bound to continue making payments. See *Taylor* v. *Gowetz, supra* at 297-300.

Where parties wish to establish that an alimony obligation terminates with respect to other events (e.g., the recipient

spouse's death or remarriage) as well as upon the death of the payor spouse, they would be well served to follow the guidance provided by Kindregan & Inker, Family Law & Practice §§ 51.39, 51.47 (2d ed. 1996) ("Such payments shall cease upon the death of either party or upon the remarriage of the party entitled to receive such payments"; "[obligation to pay alimony] shall immediately terminate on the happening of any of the following events, whichever shall occur first: the death of the husband, the death of the wife, the remarriage of the [husband/ wife] . . .").

The judgment entered in the Superior Court docket on July 5, 2001, is vacated. A new judgment is to enter declaring that (1) Henry's estate must continue to make alimony payments to Barbara until her death or remarriage; and (2) Henry's estate owes Barbara $4,100 for alimony in arrears at the time of Henry's death, plus statutory interest.

*So ordered.*