**Shirley BOSCHEE, Plaintiff and Appellant,**

v.

**Gailyn BOSCHEE, Defendant and Appellee.**

**Civ. No. 10410.**

Supreme Court of North Dakota.

Nov. 22, 1983.

Chapman and Chapman, Bismarck, for plaintiff and appellant; argued by Daniel J. Chapman, Bismarck.

Ella Van Berkom, Minot, for defendant and appellee.

SAND, Justice.

This is an appeal by Shirley Boschee (Shirley) from an amended judgment dated 1 December 1982, in which the district court vested title to certain real property in her former husband, Gailyn Boschee (Gailyn), and from an order dated 31 August 1982 denying Shirley's motion to hold him in contempt of court.

Shirley and Gailyn Boschee were divorced pursuant to a judgment dated 27 November 1981. The judgment ordered Gailyn, inter alia, to pay Shirley $80,000 as part of a property settlement. The funds were to come, in part, from the equity remaining from the sale of the parties' home. The home, which was heavily mortgaged, was valued at $165,000 and the court estimated the equity in the home to be about $50,000. The judgment further ordered Gailyn to convey to Shirley ten improved, unencumbered lots in Wachter's Third Addition, Bismarck, by 1 June 1982. Finally, the judgment ordered Shirley to execute all documents necessary to convey the remaining jointly held real property to Gailyn. Neither party was required to pay alimony.

The mortgage on the house was subsequently foreclosed. Because little or no equity existed producing any funds, Shirley received no money. She also did not receive the ten improved lots because they were also encumbered and later foreclosed upon. Shirley then filed a motion for an order finding Gailyn in contempt because of his failure to pay her the $80,000 decreed in the judgment. She also asked the court to

appoint a receiver to manage Gailyn's affairs in order to insure enforcement of the remainder of the judgment.

On 31 August 1982 the court entered an order denying Shirley's contempt motion because the foreclosure of the home was not a "sale" contemplated by the judgment and, in any event, did not result in the equity expected. The court also refused to appoint a receiver because it reasoned that neither party could afford the additional expense.

Upon advice of counsel, Shirley refused to execute the documents necessary to convey the remaining real property to Gailyn because he had not complied with the judgment. Gailyn then moved the court for an order to find Shirley in contempt for refusing to convey the property and for an order directing conveyance of the property to Gailyn. The court granted Gailyn's motion in part and entered an "amended judgment" on 1 December 1982 in which it ordered that "All other real property held jointly, by corporation or by the husband alone ... shall be the property of ... Gailyn Boschee."

Shortly after the time for appeal from the amended judgment had expired, but within ninety days, Shirley filed a motion for extension of time for appeal based upon excusable neglect. The court granted Shirley's motion and extended the time. Shirley appealed from the amended judgment and from the order refusing to appoint a receiver and hold Gailyn in contempt.

During oral argument to this Court Shirley introduced evidence that Gailyn filed a chapter 13 petition for bankruptcy on 12 August 1983.

Reluctantly, we note that the trial court either ordered an impossible judgment or the parties prior thereto did not make the court aware of their respective financial conditions. The couple may have been financially affluent at one time, particularly with respect to real estate investments; however, they now face financial difficulty. Neither the parties' briefs nor the record adequately reflect why the financial problems have developed. Gailyn attributed the dilemma to a depression in the real estate market.

The record indicates that it was difficult, if not impossible, for Gailyn to convey to Shirley either the ten lots or the $80,000 as decreed by the court. The parties' home and lots were heavily encumbered and foreclosure upon both should have appeared inevitable.

Shirley raised and presented the following issues:

"I.

"Where the Trial Court has entered judgment in a case ordering the payment of money upon the sale of property and the transfer of deeds upon property, free of encumbrances, can the Trial Court refuse to fulfill its responsibility to ensure the compliance of the defendant with its order in respect to property division?

"II.

"Where a motion is made and an affidavit is filed in support thereof, can the Trial Court ignore the rule requiring that opposing affidavits be served within one day of the hearing?"

█ We will consider issue II first. Shirley contended that the court violated Rule 6(d) of the North Dakota Rules of Civil Procedure by permitting Gailyn to make an "oral return" with testimony.

Rule 6(d), NDRCivP, in part provides:

"... When a motion is supported by affidavit, the affidavit shall be served with the motion; and, except as otherwise provided in Rule 59(c), opposing affidavits may be served not later than 1 day before the hearing, unless the court permits them to be served at some other time."

This rule, standing alone, may give the court justification to disregard the position of the party not responding, but the court as a matter of law is not required to rule against such party. The court is expected to consider the petition primarily on its merits. Furthermore, we must also take

into consideration Rule 3.2(c) of the Rules of Court, which in part provides:

"... The court, in its discretion, may require the taking of testimony or oral argument on its own motion."

■ Rule 3.2(c) clearly gives the trial court discretion in these matters. However, depending upon the matter presented by the respondent through oral testimony, the court should continue the hearing to allow the moving party time to respond if material is presented which was not covered in the affidavits by the moving party. The court in its discretion may also allow costs to the moving party whenever justified in such instances.

■ The record does not reflect that the court would have been legally required or justified to grant the motion merely because the respondent did not file and serve a return affidavit one day before the hearing. Nor does the record reflect that the movant, Shirley, was legally prejudiced as a result.

We therefore conclude that the court did not err by allowing an oral return in this instance.

■ With reference to issue I we cannot disregard the fact that Gailyn has filed a petition for bankruptcy pursuant to 11 U.S.C. ch. 13. A copy of the petition was filed with the Court, whereupon the Court requested, and the parties filed, supplemental briefs regarding the automatic stay provisions of 11 U.S.C. § 362(a). A review of the briefs and pertinent statutes leads us to believe that an automatic stay generally occurs whenever the bankruptcy laws are invoked, except as to matters arising out of, or pertaining to, child support and related items. The automatic stay, however, applies to the distribution of realty because one of the parties may be comparable to a creditor. *Rogers v. Rogers,* 671 P.2d 160 (Utah 1983); *In re Murray,* 31 B.R. 499 (Bkrtcy.E.D.Pa.1983). Nevertheless, we have reservations that the automatic stay fully applies to the determination whether or not a judgment pertaining to ownership of property is valid, particularly if it was appealed before the petition for bankruptcy was filed.

We are satisfied that the overriding issue in this case is the validity of the amended judgment which may have a bearing on the outcome of the bankruptcy proceedings, particularly as to who are creditors, etc. Conceivably, an invalid judgment, if permitted to stand, could bring about a great injustice. For this reason we believe that we should rule on the validity of the amended judgment.

Counsel for Shirley, in the supplemental brief, in substance stated that § 362(d) provides for granting relief from the automatic stay. We will assume that counsel for Shirley will prepare and present the proper application to the appropriate authority for relief from the automatic stay if that is necessary. With that understanding, we will proceed accordingly.

We reviewed the provisions of Rule 60(b), NDRCivP, and conclude that the amended judgment substantively does not come within its parameters, nor does the amended judgment provide for relief from the original judgment so as to come within this Rule.

■ Generally the court does not have continuing jurisdiction except as provided for by the rules, for limited purposes, or by statute. NDCC §§ 14–05–22 and 14–05–24 give the court continuing jurisdiction and authority to amend the original divorce judgment if the subject matter pertains to alimony, spousal support, custody, or care and education of the parties' children. The amended judgment in this instance does not involve any of these items, but in reality enforces the transfer of certain property pursuant to the original judgment. We are not aware of any statute, and none was called to our attention other than those noted above, which give the court continuing jurisdiction. Generally, where the matter emanating out of a divorce action only involves property not subject to the conditions of NDCC §§ 14–05–22 and 14–05–24, the trial court does not have continuing jurisdiction to amend the original judgment. Such a judgment is treated, basical-

ly, no differently than a judgment not involving a divorce. *Dvorak v. Dvorak,* 329 N.W.2d 868 (N.D.1983). In the *Dvorak* case the judgment was the result of a stipulation, but that was not the controlling factor regarding continuing jurisdiction. See also *Nastrom v. Nastrom,* 262 N.W.2d 487 (N.D. 1978); *Sabot v. Sabot,* 187 N.W.2d 59 (N.D. 1971); *Dietz v. Dietz,* 65 N.W.2d 470 (N.D. 1954); and *Sinkler v. Sinkler,* 49 N.D. 1144, 194 N.W. 817 (1913). In the instant matter the amended judgment deals only with the distribution of property in a divorce action and does not involve those items set out in NDCC § 14–05–22 and § 14–05–24. The procedure in the instant case might have been appropriate if brought under Rule 70, NDRCivP, because the relief sought related to the enforcement of the distribution of the property—a transfer of the property pursuant to the original judgment. If such procedure is followed, the opposing party may present reasons why the relief sought should not be granted.

Even if the court had continuing jurisdiction the amended judgment would not be valid because the court did not give consideration to, nor did it apply and satisfy, the essential equitable principles and concepts in amending the original judgment and, therefore, the amended judgment was improper.

Under the original judgment, Shirley was to receive $80,000.00 and ten improved, unencumbered lots. The money was to come in part from the sale of the house. However, the house was heavily mortgaged and a subsequent foreclosure did not produce the funds needed to make the payment to Shirley. In making the distribution of the property between Shirley and Gailyn the court was required to take into consideration and apply equitable principles and concepts. Certainly the court, in applying equity, did not intend that Shirley would only receive such property or funds if the house was sold by Gailyn but not if the property was foreclosed. Neither do we believe that the court intended Gailyn to receive certain property regardless of what occurred with respect to the property or funds which were to go to Shirley. Certainly the court, mis-

takenly or otherwise, must have genuinely believed that the sale of the house would produce the necessary funds to carry out the provisions of the judgment. As it turned out, no contingency was set out in the judgment in the event the sale of the house did not occur or produce the funds contemplated. This indicates that the original judgment considered the distribution on the assumption that all things mentioned would occur. The distribution of funds and property were all parts and parcels of one package. Shirley received nothing from or under the original judgment, but yet, under the amended judgment, was compelled to convey the remaining jointly held property to Gailyn. Even if the court, in amending the judgment, did so on the theory that it had continuing jurisdiction, which it did not, it failed to satisfy the basic requirements of equity, including a showing of changed circumstances. We are not suggesting that if this were shown the court would have jurisdiction.

We must conclude that the original judgment contemplated giving Shirley $80,000, plus ten unencumbered lots, and, in exchange, Gailyn was to receive the property mentioned. Resort to the memorandum opinion is appropriate to determine the meaning of the judgment. The memorandum opinion stated:

"*First,* the home of the parties will be sold. The defendant is a real estate broker and he will list and sell this home without fee except for the routine closing costs. The value of the home is $165,000. The equity remaining after payment of the mortgages is approximately $50,000. This equity will be the property of the wife.

"*Second,* within two weeks of the sale of the home, the wife will receive a cash payment from the husband of an amount equaling the difference between the equity she receives in the home and $80,000. In other words, it is the Court's intention that within two weeks after the sale of the house the wife will have a cash asset of $80.000."

We are convinced the proper procedure was not followed and, as a result, the court did not have authority or jurisdiction to issue the amended judgment. This puts the parties back to the position they were in before the amended judgment. Because a petition in bankruptcy has been filed, we hesitate to appoint a receiver or to issue any directions on remand other than to vacate the amended judgment. However, costs are to be assessed in favor of the appellant, Shirley.

* Justice WM. L. PAULSON served as a Surrogate Justice for this case pursuant to Section 27–17–03, N.D.C.C.

ERICKSTAD, C.J., VANDE WALLE and PEDERSON, JJ., and PAULSON, Surrogate Judge,* concur.