**Gerald Delbert SCHMIDT, Petitioner,**

**v.**

**Arlin THOMPSON, McLean County Sheriff, Respondent.**

**Civ. No. 10646.**

Supreme Court of North Dakota.

March 14, 1984.

Chapman & Chapman, Bismarck, for petitioner, argued by Daniel J. Chapman, Bismarck.

Merle Torkelson, State's Atty., Washburn, for respondent.

SAND, Justice.

Gerald Delbert Schmidt (petitioner), pursuant to North Dakota Century Code § 32–22–01, et seq., petitioned this Court for a writ of habeas corpus. Schmidt was incarcerated by an order of commitment issued by Judge William F. Hodny dated 28 February 1984 for failure to make child support payments of $500.00 per month for three children as ordered in an earlier divorce decree by Judge Hodny and affirmed by this Court in 325 N.W.2d 230 (N.D. 1982).

Before Judge Hodny issued the preliminary order resulting in the order of commitment, he designated David M. Fisher to conduct an order to show cause hearing on the matter of contempt. Fisher conducted a hearing, and on 14 December 1983 made findings of fact and recommendations. The referee also gave notice to the parties that they had a right to a review if the request was made within three days of the notice.

A request for judicial review dated 19 December 1983 was made by the attorney for Schmidt. In the meantime, Schmidt, in an instrument dated 12 December 1983, made a motion for reduction of child support to $300 per month, and on the same date his attorney made a demand for change of judge. As a result of the demand for change of judge, the presiding District Judge Graff, on 19 December 1983, assigned Judge Schneider to hear the motion for reduction of child support payments. Judge Schneider issued a stay of commitment on 19 December 1983 until the judicial review was acted upon.

Trudie Schmidt (former wife, now Trudie Keaton), on 23 December 1983, made a demand for change of judge (against Schneider), whereupon Judge Graff, pursuant to Administrative Rule 2–1981, assigned himself to hear the motion for reduction of child support. The motion for reduction of child support does not have any direct bearing on the issues before us. For that matter, the record does not disclose what action, if any, resulted from the motion.

On 15 February 1984 Judge Graff, the presiding judge of the district, wrote a letter to Judge Hodny advising that the demand for change of judge applied only to the new motion but not to the original action; and referred the demand for judicial review to Judge Hodny, together with a copy of the referee's proposed order. He further advised that counsel for Trudie had asked that Judge Hodny continue jurisdiction on this contempt matter.

On 24 February 1984 Judge Hodny issued his order stating he had reviewed and accepted the referee's findings and recommendations and directed the State's Attorney of McLean County to prepare and present to him an order of commitment. The order was prepared and presented to Judge Hodny, who signed it, on 28 February 1984 directing the Sheriff of McLean County to take Schmidt into custody and to detain him for a period of ninety days or until Schmidt paid the entire sum of $3,000 and thereby purge himself of the contempt. The petitioner has a history of requiring

judicial prodding to make support payments.

■ The petitioner, on 30 November 1983, filed for bankruptcy under Chapter 11 of the Bankruptcy Code. In *Boschee v. Boschee*, 340 N.W.2d 685 (N.D.1983), we noted that an automatic stay under bankruptcy law does not apply to child support and related matters.

■ Schmidt raised several issues which we will identify as they are considered. Some of them can be consolidated, which we did. Also, some are ill-suited to be considered in an application for a writ of habeas corpus [1] and would have been more appropriate had an appeal been taken. Habeas corpus proceedings may not be used as a substitute for an appeal, *State v. Feist*, 93 N.W.2d 646 (N.D.1958), and the court will generally inquire only whether or not the court acted within its jurisdiction. *Mazakahomni v. State*, 75 N.D. 73, 25 N.W.2d 772 (1947), *cert. denied*, 333 U.S. 857, 68 S.Ct. 727, 92 L.Ed.2d 1137. However, here some legal issues are interrelated and interwoven with jurisdiction, particularly concerning the authority to assign referees to contempt proceedings, and if the authority exists, what are the minimum qualifications for a referee. As a result we will respond to those issues.

The petitioner contended that the commitment order constituted unlawful imprisonment for debt in violation of the United States and North Dakota Constitutions. He also contended that the provisions of NDCC § 27–10–16 setting forth conditions under which a person imprisoned for contempt may be discharged apply to him.

The record and material [2] presented to us are totally inadequate to resolve these issues and, consequently, we did not consider them.

Next, the petitioner argued that in contempt proceedings a judgment and a notice of entry of judgment is required before a commitment order or warrant may be issued, or before an appeal may be taken.

The right of appeal in North Dakota is governed by statute rather than by rule. *Johnson v. King*, 325 N.W.2d 254, 256 (N.D.1982); *Sheets v. Letnes, Marshall & Fiedler, Ltd.*, 311 N.W.2d 175, 178 (N.D. 1981); *City of Bismarck v. Walker*, 308 N.W.2d 359, 361 (N.D.1981); see also NDCC §§ 28–27–01 and 28–27–02 and provisions in the respective administrative agencies authorizing appeals. Counsel may have erroneously relied upon *Trehus v. Job Service of North Dakota*, 336 N.W.2d 362 (N.D.1983), wherein we concluded that an order for judgment or any interlocutory order or memorandum opinion without an order was not appealable. Contempt proceedings are covered by a separate statute, NDCC Ch. 27–10. Basically, the specific statutory provisions on a subject prevail.

NDCC § 27–10–24 provides as follows:

"An appeal may be taken to the supreme court from any final order adjudging a person guilty of a criminal or civil contempt. Upon such appeal, the supreme court may review all the proceedings had and all the affidavits and other proof introduced by or against such person. For the purpose of reviewing questions as to the sufficiency of the evidence, a statement of the case may be prepared and settled within the time and in the manner provided in chapter 28–18 of the title Judicial Procedure, Civil and

---

1. Habeas corpus is an available remedy for persons incarcerated for civil contempt. *Thorlakson v. Wells*, 207 N.W.2d 326 (N.D.1973); *Klein v. Snider*, 253 N.W.2d 425 (N.D.1977); *In Interest of Klein*, 325 N.W.2d 227 (N.D.1982).

2. NDCC § 32–22–03. Petition must be verified by oath or affirmation by person making application.

 NDCC § 32–22–04. "Whenever an application is made to the supreme court, or to a judge thereof, proof by the oath of the person applying or other sufficient evidence shall be required that the judge of the district court having jurisdiction by the provisions of subsection 2 is absent from his district or has refused to grant such writ, or for some cause to be specially set forth, is incapable of acting, and if such proof is not produced the application shall be denied."

such appeal, except as otherwise provided in this chapter, shall be taken in the manner prescribed in chapter 28–27 of such title." [Underscoring ours.]

This Court, on a prior occasion, accepted and considered an appeal from an *order* finding the defendant not guilty of civil contempt. *Bergstrom v. Bergstrom,* 320 N.W.2d 119 (N.D.1982), citing *Red River Valley Brick Corp. ·v. City of Grand Forks,* 27 N.D. 431, 146 N.W. 876 (1914). ▮ Significantly, this provision does not relate to a judgment. It only uses the term "final order" and provides that it is appealable. This compels the conclusion that a judgment and a notice of entry of judgment are not a prerequisite to an appeal or the issuance of a commitment order. The petitioner's contention in this respect is without merit.

Next, the petitioner contended the judge did not retain jurisdiction in the main case or contempt proceedings after the demand for removal was final even though the main action was not directly related to the motion for reduction of child support which was filed the same time as the demand for removal was filed. In effect, the petitioner argued that after a demand for removal has been made, regardless upon what proposition, the judge is deprived of any further . jurisdiction arising out of the basic action. We do not agree.

A review of NDCC § 29–15–21 discloses that it was amended by Ch. 187 in 1979, by Chs. 318 and 346 in 1981, and Ch. 318 in 1983. The amendments in 1979 substituted "Rule 21 of North Dakota Rules of Criminal Procedure" for "29–15–21" in subsection 9 of § 29–15–21. The old subsection 9 was completely repealed in 1983 by Ch. 368. Some of its concepts were either in, or were placed in, what is now subsection 6. In 1981, subsection 2 of § 29–15–21 was amended by Ch. 318 by adding the following provision:

> "Any proceeding to modify an order for alimony, property division, or child support pursuant to section 14–05–24 or an order for child custody pursuant to section 14–05–22 shall be considered a

proceeding separate from the original action and the fact that the judge sought to be disqualified made any ruling in the original action shall not bar a demand for change of judge."

Subsection 2 is now subsection 3 under § 29–15–21.

In the same legislative session, 1981, the words "supreme court" were substituted for "presiding judge of the judicial district" by Ch. 346. In addition Ch. 368, S.L.1983, amended subsection 6 as now constituted to read as follows:

> "Upon receipt of a copy of a ~~timely filed~~ demand for change of judge, the judge sought to be disqualified <u>has no authority or discretion to determine the timeliness or validity of the demand and</u> shall proceed no further <u>or take any action</u> in the action or proceeding and is thereafter disqualified from doing any further act in the case <u>unless the demand is invalidated by the presiding judge. The judge sought to be disqualified shall promptly submit to the presiding judge any comments the judge may have regarding the demand. If the presiding judge thereafter invalidates the demand because it was not timely filed or for other reasons, the judge sought to be disqualified shall resume jurisdiction in the case and hear and determine the case to conclusion.</u>"
> [Underscored language is new.]

Other amendments were made but they are not significant to the issues under consideration. The legislative minutes do not provide any meaningful clue what the Legislature intended in adopting the amendments and consequently they are not very helpful to the issue under consideration.

Subsection 3 of § 29–15–21 retained the following language formerly found in subsection 2:

> "... In any event, no demand for a change of judge may be made after the judge sought to be disqualified has ruled upon any matter pertaining to the action or proceeding in which the demanding party was heard or had an opportunity to be heard...."

This provision obviously does not apply to the 1981 amendments directing that the application to modify an order for alimony, property division, or child support shall be considered a separate proceeding from the original action. The 1981 amendment, in effect, provides that even if the judge sought to be disqualified had made any ruling in the original action this does not bar a demand for a change of judge on the specific matters, such as alimony, property division or child support.

Independent of subsection 3, Schmidt contended that Judge Hodny was disqualified from acting any further in the proceedings or action because of subsection 6 of § 29–15–21, which provides as follows:

"Upon receipt of a copy of a demand for change of judge, the judge sought to be disqualified has no authority or discretion to determine the timeliness or validity of the demand and shall proceed no further or take any action in the action or proceeding and is thereafter disqualified from doing any further act in the cause unless the demand is invalidated by the presiding judge. The judge sought to be disqualified shall promptly submit to the presiding judge any comments the judge may have regarding the demand. If the presiding judge thereafter invalidates the demand because it was not timely filed or for other reasons, the judge sought to be disqualified shall resume jurisdiction in the case and hear and determine the case to conclusion."

We have no recent case law on this particular topic but in *Noble Tp. v. Aasen*, 10 N.D. 264, 86 N.W. 742 (1901) this Court considered the question whether or not the judge against whom a demand has been filed may proceed on contempt proceedings arising out of situations prior to the demand for removal. In *Aasen*, counsel claimed that he was entitled to have another judge assigned to the case under either 5454a or § 8120 of the Revised Code of 1899. The defendant's contention was overruled. The Supreme Court said:

"We are clear that the defendant is not entitled to have an outside judge called in to hear this proceeding. The sections of the Code relied upon by the defendant, and above cited, have reference either to a civil or criminal action proper, and this proceeding is neither the one nor the other. If the proceeding is to be regarded as a means of punishing a criminal contempt of court, it must be classed as a summary proceeding of a quasi criminal nature and hence not a criminal action. *State v. Crum*, 7 N.D. 299, 74 N.W. 992. If, on the other hand, the proceeding is to be regarded as a remedy resorted to in the interest of a suitor in a civil action, it must under the statute be regarded as a motion made in an action."

Section 5454a of the 1899 Code provided as follows:

"When either party to a civil action pending in any of the district courts of the state shall, after issue joined and before the opening of any term at which the cause is to be tried, file an affidavit, corroborated by the affidavit of his attorney in such cause and that of at least one other reputable person, stating that there is good reason to believe that such party cannot have a fair and impartial trial of said action by reason of the prejudice, bias or interest of the judge of the district court in which the action is pending, the court shall proceed no further in the action, but shall forthwith request, arrange for and procure the judge of some other judicial district of the state to preside at said trial in the county of the prejudicial subdivision in which the action is pending. The actual expenses of such judge while in attendance upon the trial of the cause for which the change was had and the extra expense of the court and jury, incurred by reason of said change, shall be paid by the person asking for the change, in advance, or a bond to be approved by the clerk of the district court given therefor, the amount of said bond being fixed by the presiding judge; provided, that no more than one such change shall be granted on the application of either party." [Underscoring ours.]

Significantly, the underscored language is similar to the language now found in subsection 6, formerly subsection 5, of § 29–15–21 which came into being when § 5454a was repealed by Ch. 316 of the 1971 Session Laws. Since then the Legislature, in subsection 3, as noted above, has provided that proceedings to modify an order for alimony, property division, child support or child custody are considered a separate proceeding for purposes of demanding a change of judge. In addition to the designation of certain motions as separate motions, the Legislature has also authorized the presiding judge of the district to invalidate the demand for removal under subsection 6 of § 29–15–21.

17 Am.Jur.2d *Contempt* § 79, Change of venue, page 53 (pocket part) states:

"As a general rule the statutes providing for a change of venue in criminal or civil actions or proceedings are construed not to aply to contempt proceedings. *Van Dyke v. Superior Court of Gila County*, 24 Ariz 508, 211 P 576; *Dale v. State*, 198 Ind 110, 150 NE 781, 49 ALR 647, error dismd 273 US 776, 71 LEd 886 [47], 74 S Ct 332, error dismd 274 US 763 [71], 72 L Ed 1322, 47 S Ct 591; *Brindjonc v. Brindjonc*, 96 Mont 481, 31 P2d 725.

The same authority in the main body also states that in similar proceedings for criminal contempt the accused is not entitled to a change of venue.

A change of venue is somewhat akin to, and can be used and has been used to accomplish a change of judge, therefore the same rationale has application to change of judge.

■ Taking all of these factors into consideration, we conclude that the rationale in *Noble v. Aasen, supra,* continues to apply in contempt cases, specifically where no change by the Legislature has been made to bring about a different result. If anything at all, the legislative action supports the proposition that the demand for change of judge does not disqualify the judge from any contempt proceedings that may arise out of actions or orders issued prior to the demand for removal. We did not disregard the letter of the presiding Judge Graff to Judge Hodny directing him to continue with the contempt proceeding. In arriving at the foregoing conclusion, we took into consideration that motion for reduction of child support payments or any other similar motion does not have retroactive effect but applies only to future payments. *Corbin v. Corbin*, 288 N.W.2d 61, 64 (N.D.1980). Accrued but unpaid child support payments cannot be modified. *Meadows v. Meadows*, 312 N.W.2d 464, 467 (N.D.1981); *Gasser v. Gasser*, 291 N.W.2d 272, 276 (N.D.1980).

■ In accordance with the foregoing, and from the meager record, we conclude Judge Hodny was not personally involved or disqualified [*Mayberry v. Pennsylvania*, 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971)] to act on the contempt matter arising out of the failure to make child support payments as directed by the earlier divorce decree.

Schmidt also contended and argued in the alternative that either a referee could not be authorized to conduct hearings on contempt proceedings under Ch. 27–10, NDCC, or, if authorized, must be a member of the bar. He relied upon the provisions of NDCC § 27–20–07.

We will first consider the question if or under what conditions a referee may conduct the hearing on civil contempt.

A review of Ch. 27–10 on contempts discloses that most of its provisions were superseded, but only for criminal process, by Rule 42 of the North Dakota Rules of Criminal Procedure. The matter under consideration here, however, is a civil contempt which is only quasi criminal in some respects, and as a result the provisions of Ch. 27–10 which were not superseded by NDRCrimP 42 apply.

We note NDCC § 27–10–09 provides:

"When a person accused of a criminal or civil contempt is arrested under a warrant of attachment, a copy of the warrant and of the affidavit or *report of a referee* upon which it is issued must be

served upon the accused." [Emphasis ours.]

The record furnished to us by the petitioner and the respondent does not disclose if such copies were furnished or served upon Schmidt. Neither did Schmidt make an issue of this point.

■ NDCC § 27–10–14 refers to "an action or proceeding pending in the court or before the judge or referee." This, however, may refer to the issue whether or not a contempt was committed before a judge or a referee. Section 27–10–22 refers to a contempt committed before the referee appointed by the court authorizing the presentation to the court by report of the referee instead of by affidavit. Furthermore, Rule 53 of the North Dakota Rules of Civil Procedure, which superseded Ch. 28–17, entitled "References and Trials by Referees," provides for the use of referees and masters generally. Rule 53(a)(1), NDRCivP, provides, in part, as follows:

"The court in which any action is pending may appoint a special master therein. As used in these rules, the word 'master' includes a referee, an auditor, and an examiner...."

We are satisfied that a proceeding arising out of an action over which the court has continuous jurisdiction, NDCC §§ 14–05–22 and 14–05–24, comes within Rule 53, NDRCrimP. Subdivision (a)(2) of the rule provides that either party may object to the appointment of any person as a master for the same cause as for which the challenge for cause may be taken to a petit jury in the trial of a civil action. Subdivision (a)(3) of Rule 53 states any objection taken to the appointment of any person as master must be heard and disposed of by the court. Subdivision (a)(4) of Rule 53 provides that before the hearing is undertaken the master must be sworn to hear and determine the facts referred and to make a true finding according to the evidence.

NDRCivP 53(b) states that a reference to a master [referee] shall be the exception and not the rule. Rule 53(c) states that an order of reference to a master may specify or limit the master's powers and may direct the master to report only upon particular issues or to do or perform particular acts or to receive and report evidence only, and fix the time and place for beginning and closing of the hearing and for the filing of the master's report. It also provides that a master may rule upon the admissibility of evidence unless otherwise directed by the order of reference, and that the referee has the authority to put witnesses on oath and examine them and to call as witnesses the parties to the action and examine them upon oath.

Rule 53(f), NDRCivP, provides that the master (referee) upon the matters submitted, and, if so required, shall make findings of fact and conclusions of law. It further provides that in non-jury actions the court shall accept the master's findings of fact unless clearly erroneous, and that within ten days after being served with the report a party may serve upon the other parties written objections to the report, and thereafter any objections must be by motion and notice as prescribed in Rule 6(d). It also provides that the court may adopt the report or modify it or reject it in whole or in part, or may receive further evidence or may recommit it with instructions.

■ Upon the foregoing provisions of NDCC § 27–10–14 and Rule 53, NDRCivP, we conclude that the district court had authority to appoint a referee to conduct a hearing on the civil contempt.

Unfortunately, the record as furnished to us does not disclose what authority or orders were given to the referee, nor does the record reflect if the parties were given an opportunity to object to the appointment. (The referee advised the parties they had a right to a review if made within three days.)

The referee made and filed findings of fact and recommendations from which we may assume that the referee did this pursuant to instructions or directions of the judge.

The petitioner contended, and the respondent agreed, that the referee, Fisher, was not a member of the bar. Our record of

licensed attorneys does not contain the name of David M. Fisher as a licensed attorney for the years 1983 or 1984. From this we assume that Fisher is not licensed or was not licensed during those years. However, we are not convinced that the provisions of NDCC §§ 27–20–07 and 27–20–06(1)(i) requiring a referee to be a member of the bar necessarily apply to Ch. 27–10. This may be indicative of what the minimum standards should be put per se they are not dispositive of the issue.

This brings us to the crucial issue whether or not a referee must be legally trained. Neither Ch. 27–10 nor Rule 53, NDRCivP, specifically cover this matter. However, from the various provisions, statutes, or rule we readily recognize that referees are used for various purposes. Rule 53 states "the word 'master' includes a referee, an auditor, and an examiner." If the subject is accounting or is the prime factor then a person qualified in accounting should be appointed. If the subject involves land partition (NDCC § 32–16–12) then the person should be qualified in that area. The nature of the subject matter and the assigned duties, authority and responsibility, out of necessity, determine what qualifications the referee must possess. In this respect the parties' right to object, Rule 53, NDRCivP, is designed to provide a degree of safety in this case.

The United States Supreme Court in *Addington v. Texas*, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979), a mental health case, said:

> "This Couurt repeatedly has recognized that civil commitments for any purpose constitute a significant deprivation of liberty that requires due process protection."

This concept, in our opinion, applies to any situation involving the deprivation of liberty whether it is because of health or because of being found in civil contempt, or for any other reason. The essentials of due process include notice, the opportunity to be heard and defend in an orderly proceeding adapted to the nature of the case. Black's Law Dictionary (5 ed. 1979). A perfunctory hearing is not adequate. The individual must be given a meaningful and proper hearing.

The record does not disclose specifically what duties and responsibility were assigned the referee. We, however, assume that the referee submitted the findings of fact and recommendations pursuant to the order or directive of the court. Such order legally would include a trial which would involve ruling on admissibility of evidence. We believe no person would seriously dispute that a person given this authority, duty and responsibility, which could result in the deprivation of a person's liberty for a significant period of time, should be qualified to carry out such functions and that the person whose liberty is at stake has a legal right to be heard by a person having at least the minimum qualifications for that position.

Being a licensed attorney would be the minimum qualification of a referee to conduct a hearing including ruling upon admissibility of evidence and making findings of fact and recommendations in a difficult case such as we have in the instant case. In addition, the instant case involved the bankruptcy matter which, in itself, may be complicated with reference to what property is considered to produce the finances needed to make the payments. However, we do not disregard the fact that the arrears occurred before the petition for bankruptcy was filed. We also take into consideration this state's recent change in attitude requiring persons in certain positions to be law trained. NDCC § 40–18–01 requires a municipal judge in cities over 3,000 to be a licensed attorney. The same is true of county judges, NDCC § 27–07.1–05. See also, juvenile supervisors, NDCC § 27–20–07.

As a part of the due process concept this state has provided that a person convicted in municipal court (without a jury) may appeal to county or district court and receive a trial anew with a jury. This was done to satisfy the constitutional guarantee of a jury trial. The same rationale, to a degree, but not involving a jury, is applica-

ble to the due process provisions in the instant case.

 We therefore conclude that a referee given the duty, authority and responsibility to conduct an order to show cause hearing, including the calling of witnesses, ruling on admissibility of evidence, and making findings of fact and recommendations involving incarceration, must be law trained, and licensed to practice law except as otherwise noted herein. In reaching this conclusion we are not implying that a referee in every instance must meet these qualifications. The nature of the assignment, etc., will determine the needed qualifications.

Administrative Rule 13(2)(c), adopted by the Court on 16 January 1976, in substance provides that a district judge, pursuant to NDCC § 27–20–07, may authorize and direct any juvenile supervisor who is a member of the bar or has authority to act as a juvenile commissioner to serve as a referee. NDCC § 27–20–06(1)(i) provides that any juvenile supervisor serving as a juvenile commissioner on 1 July 1969, the effective date of Ch. 27–20, may perform the functions of a referee under this chapter without being a member of the bar. Section 27–20–06(1)(i) implicitly applies to all of Ch. 27–20, including § 27–20–07. Thus, if the record had reflected that Fisher, the referee, actually was a juvenile supervisor on 1 July 1969 he would have qualified as a referee and as such we might have reached a different conclusion.

The meager record does not disclose that Schmidt was given the opportunity to object to the appointment of the referee as provided for in Rule 53, NDRCivP, or to have the matter heard by the judge, as provided for in AR–13(3). We believe the denial of this right is important and has legal significance.

We therefore conclude that Schmidt has not been afforded full due process and is entitled to the writ.

However, double jeopardy does not apply to this situation and, consequently, a new order to show cause and proceedings may be conducted to determine if Schmidt should be held in contempt and, if so, what punishment may be imposed.

We believe a parent's responsibility to provide adequate child support rests upon natural, moral and legal obligations and cannot be, or should not be, treated lightly.

Also, taking cognizance of our records, we realize a question has been raised regarding the feeding of cattle and other ranch chores. In the event of further proceedings this matter, as well as the bankruptcy situation, should be considered.

The writ is granted.

ERICKSTAD, C.J., and GIERKE, PEDERSON and VANDE WALLE, JJ., concur.